**Cynthia Sue PENNINGTON, Appellant,**

v.

**The STATE of Texas, State.**

**No. 2–00–341–CR.**

Court of Appeals of Texas,
Fort Worth.

Aug. 27, 2001.

Rehearing Overruled Oct. 4, 2001.

---

Casey & Colosi, and Terry M. Casey, Fort Worth, Texas, Attorney for Appellant.

Tim Curry, Criminal District Attorney, Charles M. Mallin, Asst. Criminal District Attorney and Chief of the Appellate Section, C. James Gibson, Greg M. Pipes and Richard G. Bland, Asst. District Attorneys, Fort Worth, Texas, Attorney for Appellee.

Panel B: LIVINGSTON, DAUPHINOT, and WALKER, JJ.

## OPINION

WALKER, Justice.

### INTRODUCTION

A jury convicted Cynthia S. Pennington ("Pennington") of possession of a controlled substance. The trial court sentenced her to ten years' confinement in the Institutional Division of the Texas Department of Criminal Justice. In a single point on appeal, Pennington claims that the trial court erred in refusing her request for a jury instruction on the defense

of necessity. We reverse the trial court's judgment and remand this case for a new trial.

## BACKGROUND FACTS

On August 5, 1997, at approximately 3:45 a.m., Arlington Police Officer Ronald Langford observed an El Camino drive by with no rear license plate light. The El Camino slowly pulled partially into a driveway containing parked cars, but then reversed and drove slowly away. He followed the El Camino in his patrol car, obtained the El Camino's license plate number, and ran a computer check of the license plate number. He learned that the license plate registration had been expired for four months. Officer Langford then stopped the El Camino.

As he approached the El Camino, Officer Langford noticed that the car's inspection sticker appeared to be fictitious, i.e., not originally issued to that car. Pennington was the El Camino's driver. Officer Langford confirmed that the identifying information on the back of the inspection sticker did not match the El Camino. He then placed Pennington under arrest.

Arlington Police Officer Jill Willis, also at the scene, searched Pennington incident to her arrest. She discovered three Ziplock bags containing white or off-white powdery residue in Pennington's pockets. The substance was identified as amphetamine. Officer Langford conducted an inventory search of the El Camino. He found Pennington's purse in the car and inventoried its contents. Pennington's purse contained seven syringes, a set of digital scales, and a small spoon with residue on it. Both Officers Langford and Willis testified that Pennington was upset and crying at the time of her arrest. They both remembered Pennington pleading with them "please don't do this" and telling them they were "ruining her life" because she had two prior possession convictions.

## REQUEST FOR INSTRUCTION

Pennington was the sole defense witness. She testified that on August 4, 1997, she was spending the night at her ex-boyfriend's house. She went to bed at around 11:30 p.m., but was awakened in the early morning hours by a noise in the house. She got out of bed and went to investigate. She observed her ex-boyfriend and one of his friends doing drugs in the living room. Pennington initially testified that her ex-boyfriend's thirteen-year-old son was present. Later, she testified that he was coming down the hall toward the living room and that she sent him back to his bedroom.

Pennington said she grabbed her purse and told the thirteen-year-old to leave with her. He refused. She argued with her ex-boyfriend, and then "raked" all of the drug paraphernalia into her purse, put the baggies of drugs in her pocket, and left the house. Pennington said she was "in hysterics." She went to a friend's house less than ten minutes away, but the friend wasn't home. It was at this point that the police followed her and stopped her. She was stopped approximately one mile from her boyfriend's house. Pennington did not deny making the statements to Officers Langford and Willis concerning her prior possession convictions. She claimed part of her argument with her ex-boyfriend that night, as well as on previous occasions, was about the drug "situation."

Pennington admitted that she intentionally or knowingly took the drugs and drug paraphernalia into her possession. She testified, however, that she only did so because she wanted to protect her ex-boyfriend's thirteen-year-old son from seeing the drugs and drug paraphernalia and from witnessing his father doing drugs in

their home. She explained that at the time she believed it was necessary for her to remove the drugs from the house in order to protect the child from a harmful and dangerous situation.

At the close of evidence, Pennington requested a jury charge instruction on the defense of necessity. The trial court found that the defense had not been raised and refused to submit it as an issue to the jury. In this appeal, Pennington argues that the trial court committed harmful error when it failed to instruct the jury on necessity.

## STANDARD OF REVIEW

 Generally, a defendant is entitled to a jury instruction on every defensive issue raised by the evidence as long as such an instruction is properly requested. *Granger v. State,* 3 S.W.3d 36, 38 (Tex. Crim.App.1999); *Reese v. State,* 877 S.W.2d 328, 333 (Tex.Crim.App.1994); *McGann v. State,* 30 S.W.3d 540, 547 (Tex. App.—Fort Worth 2000, pet. ref'd); *Miller v. State,* 940 S.W.2d 810, 812 (Tex.App.— Fort Worth 1997, pet. ref'd). If a defendant produces evidence raising each element of a requested defensive instruction, she is entitled to the instruction regardless of the source and strength of the evidence. *Hamel v. State,* 916 S.W.2d 491, 493 (Tex. Crim.App.1996) (recognizing that "an accused has the right to an instruction on any defensive issue raised by the evidence, whether that evidence is weak or strong, unimpeached or contradicted, and regardless of what the trial court may or may not think about the credibility of the defense"); *Miller v. State* 815 S.W.2d 582, 585 (Tex. Crim.App.1991) (op. on reh'g); *Brazelton v. State,* 947 S.W.2d 644, 646 (Tex.App.— Fort Worth 1997, no pet.). The credibility of the evidence presented regarding the defense is immaterial in determining whether the instruction is required. *Muniz v. State,* 851 S.W.2d 238, 254 (Tex.Crim.

App.), *cert. denied,* 510 U.S. 837, 114 S.Ct. 116, 126 L.Ed.2d 82 (1993); *Miller,* 815 S.W.2d at 585; *Shafer v. State,* 919 S.W.2d 885, 887 n. 1 (Tex.App.—Fort Worth 1996, pet. ref'd). A defendant's testimony alone is sufficient to raise a defensive issue requiring an instruction in the jury charge. *Hayes v. State,* 728 S.W.2d 804, 807 (Tex. Crim.App.1987); *Warren v. State,* 565 S.W.2d 931, 933–34 (Tex.Crim.App. [Panel Op.] 1978). We review the evidence offered in support of a defensive issue in the light most favorable to the defense. *Shafer,* 919 S.W.2d at 887 n. 1.

## LAW OF NECESSITY

 To raise necessity, a defendant must admit she committed the offense and then offer necessity as a justification. *See Young v. State,* 991 S.W.2d 835, 839 (Tex. Crim.App.), *cert. denied,* 528 U.S. 1063, 120 S.Ct. 618, 145 L.Ed.2d 513 (1999). The defense of necessity "exonerates a person who commits proscribed conduct in order to prevent an even greater harm." *Acosta v. State,* 660 S.W.2d 611, 614 (Tex. App.—Corpus Christi 1983, no pet.). The Texas Penal Code authorizes necessity as a justification defense to a criminal charge if:

(1) the actor reasonably believes the conduct is immediately necessary to avoid imminent harm;

(2) the desirability and urgency of avoiding the harm clearly outweigh, according to ordinary standards of reasonableness, the harm sought to be prevented by the law proscribing the conduct; and

(3) a legislative purpose to exclude the justification claimed for the conduct does not otherwise plainly appear.

TEX. PENAL CODE ANN. § 9.22(1)-(3) (Vernon 1994); *see also id.* § 9.02 (Vernon 1994) (providing "[i]t is a defense to prosecution that the conduct in question is justified

under this chapter."). The requirements of subsections 9.22(1) and (2) must be satisfied by evidence, while subsection (3) presents a question of law. *Leach v. State,* 726 S.W.2d 598, 600 (Tex.App.—Houston [14th Dist.] 1987, no pet.).

▓▓▓ Section 9.22, subsection (1) sets forth the basic two-prong test a defendant must satisfy in order to be entitled to a jury instruction on the defense of necessity. First, a defendant is required to present evidence that she reasonably believed a *specific harm was imminent. See* TEX. PENAL CODE ANN. § 9.22(1); *Johnson v. State,* 650 S.W.2d 414, 416 (Tex.Crim.App. 1983); *Brazelton,* 947 S.W.2d at 648. "Imminent" means something that is impending, not pending; something that is on the point of happening, not about to happen. *Jackson v. State,* 50 S.W.3d 579, 594–95 (Tex.App.—Fort Worth 2001, pet. filed); *Smith v. State,* 874 S.W.2d 269, 272–73 (Tex.App.—Houston [14th Dist.] 1994, pet. ref'd). Harm is imminent when there is an emergency situation and it is "immediately necessary" to avoid that harm. *Jackson,* 50 S.W.3d at 594–95; *Smith,* 874 S.W.2d at 273. In other words, a split-second decision is required without time to consider the law. *Jackson,* 50 S.W.3d at 594–95; *Smith,* 874 S.W.2d at 273.

▓▓▓ Second, a defendant must present evidence that she reasonably believed the criminal conduct was *immediately necessary* to avoid the imminent harm. *See* TEX. PENAL CODE ANN. § 9.22(1); *Brazelton,* 947 S.W.2d at 648. "Reasonable belief" means a belief that would be held by an ordinary and prudent man in the same circumstances as the actor. TEX. PENAL CODE ANN. § 1.07(a)(42) (Vernon 1994). As a general rule, determination of the reasonableness of an accused's belief is a question of fact, and should be viewed from the accused's standpoint at the time he acted. *Fitzgerald v.*

*State,* 782 S.W.2d 876, 885 (Tex.Crim.App. 1990); *Brazelton,* 947 S.W.2d at 648 (citing *Sanders v. State,* 707 S.W.2d 78, 79–80 (Tex.Crim.App.1986)); *Juarez v. State,* 886 S.W.2d 511, 514 (Tex.App.—Houston [1st Dist.] 1994, pet. ref'd).

## APPLICATION OF THE LAW TO THE FACTS

The State asserts that Pennington's possession of the drugs and drug paraphernalia was not "immediately necessary" because no threat of "imminent harm" existed. The State points out that, according to Pennington's testimony, the thirteen-year-old boy complied with her request that he return to his bedroom. Consequently, the State argues, the threat of imminent harm, the boy witnessing drug use, had dissipated by the time she took possession of the drugs and drug paraphernalia.

The State also asks us to abandon one of our holdings in *Brazelton,* 947 S.W.2d at 649. In *Brazelton,* we rejected the State's argument that Brazelton's possession of marijuana was not "immediately necessary" because the reasonable alternative of calling the police existed. *Id.* We held, "[w]hile the availability of legal alternatives may be relevant to the reasonableness of an actor's conduct, the unavailability of alternative legal courses of conduct is not a requirement of the defense of necessity." *Id.*

Pennington, on the other hand, argues that she admitted to committing the offense but claimed her conduct was justified by necessity, that her own testimony raises each element of the defense of necessity, that the trial court erred by refusing her request for an instruction on the defense, and that *Brazelton* controls our disposition of her appeal.

 We review the record in the light most favorable to Pennington's defense to determine whether evidence exists that she reasonably believed her conduct was immediately necessary to avoid imminent harm. Pennington testified repeatedly that she knowingly and intentionally possessed the drugs and drug paraphernalia to keep "the kid" from seeing the drugs and drug paraphernalia and to keep him from witnessing drug use by his father in his house. She testified that the situation was harmful and dangerous and said she was thinking, "get them away from the child." Pennington was stopped within a mile of her ex-boyfriend's house less than ten minutes after leaving the house.

Clearly, Pennington presented evidence that she reasonably believed a specific harm was imminent, that being a thirteen-year-old child viewing drugs or drug use by his father in his own home. According to Pennington, this danger was impending, it was about to occur. Viewed from Pennington's standpoint at the time she took possession of the drugs and paraphernalia, we cannot conclude as a matter of law that an ordinary and prudent person in the same circumstances as Pennington would not hold the same belief that taking possession of the drugs and paraphernalia was immediately necessary to avoid imminent harm. *See Brazelton*, 947 S.W.2d at 648–49.

 The fact that Pennington's testimony concerning her necessity defense was feeble, contradicted, impeached, or not credible, does not eradicate her entitlement to a defensive instruction. *See Sanders*, 707 S.W.2d at 80; *Thomas v. State*, 678 S.W.2d 82, 84 (Tex.Crim.App. 1984). Pennington unequivocally admitted she knowingly and intentionally possessed the drugs and drug paraphernalia, but she offered evidence, however weak, impeached, contradicted, or incredible, raising the issue that she reasonably believed her conduct was immediately necessary to avoid imminent harm. We hold that Pennington's testimony, viewed in the light most favorable to her defense of necessity, was sufficient to require submission of the defense to the fact finder. *Compare Thomas*, 678 S.W.2d at 84 (holding defendant's testimony raised issue of necessity defense even though defendant's version of facts was controverted by police officer); *Brazelton*, 947 S.W.2d at 648–49 (holding defendant's testimony raised issue of necessity defense).

We agree with Pennington that the facts of her case fall within the parameters of *Brazelton*. The State argues that *Brazelton* is distinguishable. The factual distinctions pointed out by the State, however, go to the credibility of Pennington's necessity defense, not to whether, viewing the record in the light most favorable to the necessity defense, some evidence exists of each element of the defense. We rely on *Brazelton* and hold that Pennington, like Brazelton, was entitled to an instruction on her defense of necessity.

 An erroneous or incomplete jury charge, however, does not result in automatic reversal of a conviction. *Brazelton*, 947 S.W.2d at 649 (citing *Almanza v. State*, 686 S.W.2d 157, 171 (Tex.Crim.App. 1984) (op. on reh'g)). Error in the charge, if timely objected to in the trial court, requires reversal if the error is "calculated to injure the rights of the defendant," which means no more than that there must be *some* harm to the accused from the error. TEX.CODE CRIM. PROC. ANN. art. 36.19 (Vernon 1981); *see Abdnor v. State*, 871 S.W.2d 726, 731 (Tex.Crim.App.1994); *Almanza*, 686 S.W.2d at 171.

 Pennington preserved the trial court's error for our review. Therefore, we must determine whether she suffered

some harm from this error. Pennington admitted she possessed the drugs and drug paraphernalia, as is required by the defense of necessity. *See Hermosillo v. State*, 903 S.W.2d 60, 69 (Tex.App.—Fort Worth 1995, pet. ref'd) (acknowledging that admission or responsibility for the criminal act is a prerequisite to establishing necessity as a defense). The State argued in closing argument to the jury:

> You have two issues to resolve, basically, when you're talking about a case where a person is charged with possession of narcotics, of controlled substances. It either was or wasn't drugs, she either did or didn't possess it. There is no requirement in here that the State prove a particular motive.

> Whether the person, the Defendant in this case possessed with the intent to use the drug, possessed with the intent to sale [sic] the drug, that's not the issue, or possessed with the intent to do something she claims to have been considering a violent [sic] effort on her part to protect some 13–year–old. There was no testimony that the child was in danger of using this drug.... She admitted to you on this stand that she knew or had good reason to believe what it was. She didn't have any doubt that it was [a] controlled substance. She told you that she gathered it up.

Absent a necessity charge, as pointed out by the State in closing argument, the jury had no option but to convict Pennington. Thus, Pennington clearly suffered some harm. Having determined that the trial court erred in denying Pennington's necessity instruction and that the error was harmful, we sustain Pennington's sole issue.

We next address the State's request that we modify or abandon certain language in *Brazelton.* 947 S.W.2d at 649. The State urges us to reconsider the following language set forth in *Brazelton:*

> While the availability of legal alternatives may be relevant to the reasonableness of an actor's conduct, the unavailability of alternative legal courses of conduct is not a requirement of the defense of necessity. *See* TEX. PENAL CODE ANN. § 9.22(3) (Vernon 1994); *see also Spakes v. State*, 913 S.W.2d 597, 598 (Tex.Crim.App.1996).

*Id.* The State argues that "[o]ne reason why it is impossible for Appellant to show that her possession of the drugs was 'immediately necessary' to avoid 'imminent harm' is that she provided no explanation for why she didn't exercise a reasonable alternative, like simply keeping the boy in his room (which she was able to do) and calling the police." The State contends that the existence of the alternative of calling the police demonstrates that the boy was not in imminent danger and asserts that legal alternatives to Pennington's conduct may be relevant not only to the reasonableness of her conduct but also to whether the conduct was "immediately necessary" and whether harm was "imminent."

■ We agree with the State that, when the jury is instructed on the defense of necessity, evidence of the availability of legal alternatives may be relevant not only to the reasonableness of a defendant's conduct but also to whether the conduct was "immediately necessary" and whether harm was "imminent." *Brazelton* does not hold otherwise. But we cannot agree with the State's position that the mere existence of such legal alternatives automatically defeats a defendant's entitlement to an instruction on the defense of necessity. *Brazelton* correctly holds that the unavailability of legal alternatives is not a requirement of the defense of necessity. *Id.* The legislature has not made proof of the

lack of available legal alternatives an element of this defense. *See* TEX. PENAL CODE ANN. § 9.22. We will not judicially enforce a legislatively nonexistent element. Therefore, we decline to adopt the State's position that it was impossible for Pennington to raise the defense of necessity without providing an explanation for her failure to exercise a reasonable alternative, like keeping the child in his room and calling the police. We decline to modify or abandon any portion of *Brazelton*.

## CONCLUSION

Having sustained Pennington's sole issue, we reverse the trial court's judgment and remand this case for a new trial.