NUMBER 13-03-230-CR



COURT OF APPEALS



THIRTEENTH DISTRICT OF TEXAS



CORPUS CHRISTI - EDINBURG 


 


WILLIAM CARROLL FOX, JR., Appellant,


v.



THE STATE OF TEXAS, Appellee.

 


On appeal from the 230th District Court of Harris County, Texas.


 


MEMORANDUM OPINION



Before Chief Justice Valdez and Justices Hinojosa and Yañez


Memorandum Opinion by Justice Yañez


 

 A jury convicted appellant, William Carroll Fox, of aggravated assault and assessed
his punishment at five years' community supervision and a $7,000.00 fine. (1) In his first
issue, appellant contends the trial court erred when it denied his requested jury charge on
necessity. (2) In his remaining four issues, appellant complains of various evidentiary rulings
by the trial court. We reverse appellant's conviction and remand to the trial court for a new
trial. 

Background 


 Viewed in the light most favorable to the requested defense of necessity, (3) the
evidence presented at trial, including appellant's testimony, demonstrated the following: 
On August 29, 2002, at approximately 7:40 p.m., appellant was stopped at a red light when
his green Dodge pick-up was rear-ended by a red pick-up driven by Justin McIntosh. 
Appellant's wife, Dorene, was riding in the front passenger seat; his son and daughter were
riding in the back seat. After briefly checking on his family, appellant approached
McIntosh's truck and asked if McIntosh was "okay;" McIntosh said he was. Appellant
noticed that McIntosh's face was red, his hands were clenched on the steering wheel, and
he was sweating and staring straight ahead. After McIntosh told appellant he had
insurance, appellant walked to the front of McIntosh's vehicle and waited for McIntosh to
provide the information. 

 Instead of providing any information, however, McIntosh began backing up his truck. 
Appellant noticed that McIntosh had turned the steering wheel and was about to drive
away. Appellant testified that McIntosh stepped on the gas and the red truck lunged at him
and stopped abruptly, causing appellant to step back quickly. Appellant noticed that
McIntosh was "scanning to the right." Appellant then noticed that Dorene was standing
outside of their truck with the passenger-side door open. Appellant did not know where his
twelve-year-old daughter was. Appellant twice told McIntosh, "[d]on't do it;" McIntosh
replied, "f-k off." Appellant testified he believed Dorene was "in grave danger" because
McIntosh had "just taken aim at her" and he didn't know if she was "going to be able to
jump out of the way." When McIntosh accelerated, appellant pulled a handgun from a
holster in his waistband and fired two shots at McIntosh. Appellant paused, then fired
several more shots at McIntosh "when it was evident that he wasn't breaking this off and
he's heading towards my wife." Appellant's last shot was fired when McIntosh's truck was
"about even" with the back of appellant's truck. McIntosh's truck then veered to the right
and continued to accelerate, leaving the scene of the accident. 

 At trial, Dorene provided similar testimony. She testified she was standing outside
the truck with the door open when she saw McIntosh's truck coming toward her. She "kind
of like froze;" the truck then shifted to the right. Dorene testified that if McIntosh's truck had
not shifted its path, she "would have been a hood ornament." Dorene got back in the truck 

and called 911, requesting an ambulance and the police.

 Several witnesses testified at trial as to various versions of the events they
observed. James David, a wrecker driver who observed the collision from a nearby gas
station, testified that he saw McIntosh's truck "driving off from the accident scene." David
followed McIntosh's truck for approximately five miles as it zigzagged through several
residential neighborhoods. McIntosh finally stopped at the home of a friend. David called
a police dispatcher and waited for the police to arrive.

 McIntosh testified that he had been drinking beer and tequila most of the afternoon 
the day of the accident. When he was eventually taken to the hospital for the gunshot
wound he suffered to his arm, it was determined that he had a blood-alcohol level of 0.28. 
McIntosh testified he did not recall much of the events surrounding the accident because
he was intoxicated. In particular, he did not recall seeing Dorene outside the truck. 
McIntosh testified that after appellant began shooting at him, he "drove away faster."

Standard of Review and Applicable Law 


 An accused has the right to an instruction on any defensive issue raised by the
evidence, whether that evidence is weak or strong, unimpeached or contradicted, and
regardless of what the trial court may or may not think about the credibility of the evidence. (4)
If the evidence, viewed in a favorable light, does not establish the defensive issue, an
instruction is not required. (5) A defendant's testimony alone is sufficient to raise a defensive
issue requiring an instruction in the jury charge. (6) 

 The defense of necessity, as set out in the penal code, requires a reasonable belief
and determination on the part of the defendant that the commission of the offense charged
against him is immediately necessary to avoid imminent harm. (7) The penal code provides
that an actor's conduct is justified if: 

(1) the actor reasonably believes the conduct is immediately necessary

to avoid imminent harm;


(2) the desirability and urgency of avoiding the harm clearly outweigh,

according to ordinary standards of reasonableness, the harm sought to

be prevented by the law proscribing the conduct; and

 

(3) a legislative purpose to exclude the justification claimed for the conduct
does not otherwise plainly appear. (8)


 The first prong of the necessity defense requires a defendant to present evidence 
that he reasonably believed a specific harm was imminent. (9) "Imminent" means something
that is impending, not pending; something that is on the point of happening, not about to
happen. (10) Harm is imminent when there is an emergency situation and it is "immediately
necessary" to avoid that harm. (11) In other words, a split-second decision is required without
time to consider the law. (12) Evidence of a generalized fear of harm is not sufficient to raise
the issue of imminent harm. (13)

 Secondly, a defendant must present evidence that he reasonably believed the
criminal conduct was immediately necessary to avoid the imminent harm. (14) "Reasonable
belief" means a belief that would be held by an ordinary and prudent man in the same
circumstances as the actor. (15) As a general rule, determination of the reasonableness of
an accused's belief is a question of fact and should be viewed from the accused's
standpoint at the time he acted. (16) A defendant's belief that conduct was immediately
necessary to avoid imminent harm may be deemed unreasonable as a matter of law,
however, if undisputed facts demonstrate a complete absence of evidence of immediate
necessity or imminent harm. (17)

Analysis 


 In his first issue, appellant contends the trial court erred in denying his request for
an instruction on necessity. At trial, the State argued that a necessity instruction is
"redundant" when an instruction on self-defense is included in the charge. The trial court
agreed and removed the instruction on necessity. Thus, the jury charge included an
instruction on self-defense and defense of a third person, (18) but no instruction on necessity.

 On appeal, the State again argues that when a defendant has been provided an
instruction on self-defense or defense of a third person, he is not also entitled to an
instruction on necessity. According to the State, "there is a legislative purpose to exclude
the necessity defense when a defendant is relying upon his right to use deadly force in self-defense or in defense of a third person." 

 The court of criminal appeals, however, has recently rejected the argument made
by the State. (19) In Bowen v. State, the court of criminal appeals reaffirmed the principle that
a defendant is entitled to the submission of every defense raised by the evidence, even if
the defense is inconsistent with other submitted defenses. (20) The court noted that necessity
and self-defense are separate defenses, and that submitting a self-defense instruction
does not foreclose the availability of a necessity instruction. (21) Accordingly, we reject the
State's argument that submission of a self-defense instruction precluded the submission
of a necessity instruction, and turn to the issue of whether the evidence presented raised
the defense of necessity. 

 Here, appellant testified that when he saw McIntosh aim the truck at Dorene and
step on the gas, he "knew it's do or die" and fired at McIntosh. Appellant testified he 
processed the information in "a split second." Appellant stated he fired all the shots in "less
than two and a half to two seconds." We conclude appellant presented evidence that he
reasonably believed that a specific harm was imminent. (22) 

 With regard to whether appellant reasonably believed his conduct was immediately
necessary to avoid the imminent harm, appellant testified that he fired at McIntosh "to
make him stop or veer or break off that present trajectory that he was heading on." 
Appellant stated his actions were necessary because he was "trying to prevent the loss of
[his] wife's life and potentially [his] daughter's." Viewed from appellant's standpoint at the
time he acted, (23) we find appellant presented evidence that he reasonably believed his
conduct was immediately necessary to avoid the imminent harm. (24) Viewing the record in
the light most favorable to the defense, we conclude appellant was entitled to an instruction
on his necessity defense. (25) 

Harm 


 An erroneous or incomplete jury charge, however, does not result in automatic
reversal of a conviction. (26) Properly preserved charge error requires reversal if the error
was "calculated to injure the rights of [the] defendant," which means no more than that
there must be some harm to the accused from the error. (27) In other words, a properly
preserved error will call for reversal as long as the error is not harmless. (28) In making this
determination, "the actual degree of harm must be assayed in light of the entire jury
charge, the state of the evidence, including the contested issues and weight of probative
evidence, the argument of counsel and any other relevant information revealed by the
record of the trial as a whole." (29)

 A defendant preserves error for appellate review if a request for a special instruction
on a defensive issue is specific enough to put the trial court on notice of an omission or
error in the charge. (30) Here, appellant argued to the trial court that including an instruction
on necessity was "appropriate for this case." We conclude appellant preserved error for
review. (31) 

 In arguing in favor of the inclusion of the necessity instruction, appellant's counsel
argued to the trial court:

[Appellant's counsel]: The reason it's important, Judge, is I don't want the
jury thinking that, you know what, as regards self-defense, Carroll Fox was
already out of harm's way. In fact, you know what, he managed to jump out
of that [sic] vehicle.

 And then that takes away-- he still needed to shoot at that vehicle to
save his wife. He had no choice. It's immediate. It's split second. The
elements are met in that on the defense of necessity.


 As appellant's counsel noted, if the jury believed that appellant was safely out of
harm's way when he shot at McIntosh, it properly rejected his self-defense argument. 
Similarly, with respect to defense of a third person, the trial court instructed the jury:

In defense of a third person, there is no requirement that the defendant
retreat prior to his use of deadly force in defense of the third person,
however, it is necessary that the defendant reasonably believes that a
reasonable person in the third person's situation would not have retreated. 
(Emphasis added).


 In closing argument, the State emphasized that to find appellant not guilty, the jury
must accept appellant's testimony that he reasonably believed Dorene would not get out
of the way:

[Prosecutor]: I think this case is fairly easy in a sense. You don't have to get
too wrapped up in the law. Although there is one part on Page 3 of the
Charge talking about the duty to retreat. And from the Defendant's point of
view, the third person that he's trying to protect, he has to reasonably believe
that they can't retreat.

 I think this Defendant said he saw his wife out there, if you believe
that, and the wife said she froze, if you believe that. And that he would have
to, I guess, know that she couldn't get in the truck and that she would freeze.

 I think if you look at Page 3, you can work through that, the defense
of another, the person that's defending has to believe reasonably that the
other person wouldn't try to get out of a moving lane of traffic and, you know,
get out of the street. (Emphasis added).


 Thus, if the jury did not accept appellant's testimony that he reasonably believed
Dorene would not get out of the way, it properly rejected his defense-of-a-third-person
argument. 

 However, if the jury had been charged on the defense of necessity, it could have
determined that appellant reasonably believed (1) that the harm of Dorene being struck
down by McIntosh's truck was imminent and (2) that shooting McIntosh was immediately
necessary to avoid the harm, (32) without being required to accept that appellant reasonably
believed Dorene would not get out of the way. Thus, the jury could have concluded that
appellant met the elements of a necessity defense, but not the elements of self-defense
or defense of a third person. (33) Absent a necessity instruction, the jury did not have this
option. Therefore, we hold that appellant suffered some harm from the trial court's failure
to charge the jury on necessity. (34) We sustain appellant's first issue. 

Conclusion 


 The trial court erred in refusing appellant's requested instruction on necessity. 
Appellant was harmed by this error and is entitled to a new trial. Accordingly, we reverse
appellant's conviction and remand this case to the trial court for a new trial in accordance
with this opinion.

 Because of our disposition of appellant's first issue, we need not address his
remaining issues. (35) 



 

 LINDA REYNA YAÑEZ,

 Justice




Do not publish. Tex. R. App. P. 47.2(b).


Memorandum opinion delivered and filed 

this the 31st day of August, 2006.

1. See Tex. Pen. Code Ann. § 22.02(a)(2) (Vernon Supp. 2006).
2. See Tex. Pen. Code Ann. § 9.22 (Vernon 2003). 
3. We view the evidence submitted in support of a necessity defense in the light most favorable to the
defense. See Pennington v. State, 54 S.W.3d 852, 856 (Tex. App.-Fort Worth 2001, pet. ref'd); Brazelton
v. State, 947 S.W.2d 644, 646 (Tex. App.-Fort Worth 1997, no pet.). 
4. Granger v. State, 3 S.W.3d 36, 38 (Tex. Crim. App. 1999); Hamel v. State, 916 S.W.2d 491, 493
(Tex. Crim. App. 1996)
.
5. Dyson v. State, 672 S.W.2d 460, 463 (Tex. Crim. App. 1984).
6. Miller v. State, 815 S.W.2d 582, 585 (Tex. Crim. App. 1991); Pennington v. State, 54 S.W.3d 852,
856 (Tex. App.-Fort Worth 2001, pet. ref'd). 
7. See Tex. Pen. Code Ann. § 9.22 (Vernon 2003). 
8. Id.
9. Pennington, 54 S.W.3d at 857. 
10. Id. 
11. Id.
12. Id.
13. Brazelton, 947 S.W.2d at 648.
14. Pennington, 54 S.W.3d at 857. 
15. Id. 
16. Id.
17. Brazelton, 947 S.W.2d at 648-49.
18. See Tex. Pen. Code Ann. § 9.33 (Vernon 2003). Section 9.33 provides, essentially, that a person
is justified in using deadly force to protect a third person when that third person is threatened by
circumstances that would entitle the actor to protect himself, and the actor reasonably believes his intervention
is immediately necessary. See id.; Hamel v. State, 916 S.W.2d 491, 493 (Tex. Crim. App. 1996).

 
19. See Bowen v.State, 162 S.W.3d 226, 229-30 (Tex. Crim. App. 2005).
20. See id. at 229. 
21. See id. at 229-30. 
22. See Pennington, 54 S.W.3d at 857. 
23. See id. 
24. See id.
25. See id. at 858. 
26. See id.
27. Tex. Code Crim. Proc. Ann. art. 36.19 (Vernon 1981); see also Abdnor v. State, 871 S.W.2d 726,
731 (Tex. Crim. App. 1994); Almanza v. State, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (op. on reh'g). 
28. Almanza, 686 S.W.2d at 171. 
29. Id.; see also Ovalle v. State, 13 S.W.3d 774, 786 (Tex. Crim. App. 2000).
30. Brazelton, 947 S.W.2d at 647.
31. See id. 
32. See Pennington, 54 S.W.3d at 857; see also Judge Elizabeth Berry & Judge George Gallagher, 
Texas Criminal Jury Charges, § 12:1040.30 (Heidi Lowry, ed., 2005), which provides, in pertinent part:


As to the law of necessity, you are instructed that a person's conduct is justified if that person
reasonably believes his conduct is immediately necessary to avoid imminent harm; the
desirability and urgency of avoiding the harm clearly outweigh, according to ordinary
standards of reasonableness, the harm sought to be prevented by the law prescribing the
conduct; and a legislative purpose to exclude the justification claimed for the conduct does
not otherwise plainly appear. 
33. "A person is justified in using force against another when and to the degree he reasonably believes
the force is immediately necessary to protect himself against the other's use or attempted use of unlawful
force." Tex. Pen. Code Ann. § 9.31 (Vernon 2003). 


A person is justified in using deadly force against another (1) if he would be justified in using force according
to section 9.31 of the Texas Penal Code; (2) if a reasonable person in the actor's shoes would not have
retreated; and (3) when and to the degree he reasonably believes the deadly force is immediately necessary
to protect himself against the other's use or attempted use of unlawful deadly force. Id.§ 9.32 .


A person is justified in using force or deadly force against another to protect a third person if (1) under the
circumstance as the actor reasonably believes them to be, the actor would be justified in using force under
sections 9.31 or 9.32 of the Texas Penal Code to protect himself against the unlawful force or unlawful deadly
force he reasonably believes to be threatening the third person he seeks to protect; and (2) the actor
reasonably believes that his intervention is immediately necessary to protect the third person. Id. § 9.33.
34. See Brazelton, 947 S.W.2d at 650. 
35. See Tex. R. App. P. 47.1