

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-14-00508-CR
### NO. 02-14-00509-CR

NICOLE DOBRY                                    APPELLANT

V.

THE STATE OF TEXAS                                   STATE

----------

## FROM THE 362ND DISTRICT COURT OF DENTON COUNTY
## TRIAL COURT NO. F-2012-1789-A, F-2012-1790-A

----------

## MEMORANDUM OPINION[1]

----------

A jury convicted Appellant Nicole Dobry of interference with child custody in two separate causes and assessed her punishment at fifteen months' confinement for each offense. In a single point, Nicole challenges the sufficiency

---

[1]*See* Tex. R. App. P. 47.4.

of the evidence to support the jury's implied rejection of her necessity defense. We will affirm.

Nicole and Christopher were married in 2003. They later had two children—S.D. in 2006 and G.D. in 2009. In July 2010, Christopher filed for divorce, and in May 2012, the divorce was finalized. The decree named Nicole and Christopher joint managing conservators and awarded Christopher the right to designate the children's primary residence. Nicole was awarded possession of the children from 6:00 p.m. on Thursday to 9:00 a.m. on Friday each week and from 12:00 p.m. to 4:00 p.m. on the first, third, and fifth Sundays of each month. Nicole's periods of possession on Sundays were supervised.

On the morning of Friday July 13, 2012, Nicole did not appear at the designated location to return the children to Christopher. Christopher contacted the police, as did Nicole's then-boyfriend, and the authorities soon began an investigation into the whereabouts of Nicole and the children. Approximately two weeks later, on July 28, 2012, authorities located Nicole and the children at a hotel in Las Vegas. Nicole was arrested; the children had not been harmed. A grand jury later indicted Nicole for interference with child custody as to both S.D. and G.D.

At trial, the evidence showed that before being located in Las Vegas, Nicole had driven with the children to New Mexico, Oklahoma City, Kansas, and back to the Metroplex. Nicole admitted that she had retained possession of the

2

children in violation of a court order (the divorce decree) and that she was aware of the order.  However, she explained that she had done so because it was necessary for the safety of the children—she believed that Christopher was abusing them, and although she had made several referrals to Child Protective Services (CPS) regarding the alleged abuse, they had concluded that her allegations were unfounded.  At the guilt-innocence phase, the trial court charged the jury on the defense of necessity.

In her only point, Nicole argues that the evidence is insufficient to support her convictions because the State failed to offer any evidence to overcome her necessity defense.  She contends that "no rational juror could have found beyond a reasonable doubt that her actions were not justified" because "[t]he State offered no evidence that would negate her belief that her children, especially her daughter, were in imminent danger."  We disagree.

A person commits the offense of interference with child custody if the person takes or retains a child younger than eighteen years of age when the person knows the taking or retention of the child violates the express terms of a judgment or court order disposing of the child's custody.  Tex. Penal Code Ann. § 25.03(a)(1) (West Supp. 2015).

Under the defense of necessity, conduct is justified if (1) the actor *reasonably believed* the conduct was immediately necessary to avoid imminent harm; (2) the desirability and urgency of avoiding the harm clearly outweigh,

3

according to ordinary standards of reasonableness, the harm sought to be prevented by the law proscribing the conduct; and (3) a legislative purpose to exclude the justification claimed for the conduct does not otherwise plainly appear. *See id.* § 9.22 (West 2011). A reasonable belief is a belief that an ordinary and prudent person would hold in the same circumstances as the defendant. *See id.* § 1.07(a)(42) (West Supp. 2015). Generally, determination of the reasonableness of the accused's belief is a question of fact and should be viewed from the accused's standpoint at the time he acted. *Pennington v. State*, 54 S.W.3d 852, 857 (Tex. App.—Fort Worth 2001, pet. ref'd). However, the defendant's belief that his conduct was immediately necessary may be deemed unreasonable as a matter of law if the undisputed facts demonstrate a complete absence of immediate necessity or imminent harm. *Washington v. State*, 152 S.W.3d 209, 212 (Tex. App.—Amarillo 2004, no pet.).

After the defendant has introduced some evidence of a defense, the State bears the burden not to introduce evidence disproving the defense but rather to prove its case beyond a reasonable doubt. *Zuliani v. State*, 97 S.W.3d 589, 594 (Tex. Crim. App. 2003); *Saxton v. State*, 804 S.W.2d 910, 913–14 (Tex. Crim. App. 1991). To determine the sufficiency of the evidence to disprove the necessity defense here, we ask whether, after viewing all the evidence in the light most favorable to the prosecution, any rational trier of fact would have found the essential elements of the offense beyond a reasonable doubt and also would

4

have found against appellant on the necessity issue beyond a reasonable doubt. *See Saxton*, 804 S.W.2d at 914; *Remillard v. State*, No. 02-13-00074-CR, 2014 WL 70112, at *4 (Tex. App.—Fort Worth Jan. 9, 2014, no pet.) (mem. op., not designated for publication). The trier of fact is the sole judge of the weight and credibility of the evidence. *See* Tex. Code Crim. Proc. Ann. art. 38.04 (West 1979); *Dobbs v. State*, 434 S.W.3d 166, 170 (Tex. Crim. App. 2014). Thus, when performing an evidentiary sufficiency review, we may not re-evaluate the weight and credibility of the evidence and substitute our judgment for that of the factfinder. *See Montgomery v. State*, 369 S.W.3d 188, 192 (Tex. Crim. App. 2012).

The State called four rebuttal witnesses after Nicole testified and the defense rested. Christopher testified that he had never sexually abused S.D. but that there were "a lot" of abuse allegations made during the divorce case. He explained that every doctor that examined S.D. had concluded that she had not been sexually abused, that CPS had ruled out each allegation, and that CPS had determined that Nicole was coaching S.D. to make allegations of sexual abuse.

The State next called S.D., who was in third grade at the time of trial. S.D. testified that Christopher had never touched her inappropriately but that she had said that he had done so because her mother had told her to say so. S.D. said the allegations of sexual abuse were not true.

Next, CPS investigator Jennifer Edwards testified that she conducted two investigations involving alleged sexual abuse of S.D. by Christopher. The first investigation began in August 2010, a month after Christopher filed for divorce. S.D. did not make an outcry during the forensic interview, and Nicole seemed "shocked" when Edwards told her so. About ten minutes after the interviews had concluded, Nicole called Edwards, said that S.D. was ready to tell the truth, and asked if they could come back. Edwards obliged the request, and S.D. again failed to make an outcry of sexual abuse during a second forensic interview. Nicole was "a little displeased" by the news. Although S.D. did not make an outcry, she did disclose some information that concerned Edwards—that Nicole had coached S.D. to make an outcry of sexual abuse. Edwards closed the investigation.

In March 2011, Edwards investigated another referral involving allegations of sexual abuse against S.D. She interviewed S.D. at her school, and S.D. did not make an outcry. Edwards later learned from a medical professional that S.D. had disclosed sexual abuse, so Edwards re-interviewed S.D., who said that Christopher had "touched her vagina and . . . put his pee-pee in her mouth." Christopher agreed to halt his visitation while the investigation proceeded. Edwards eventually ruled out the allegation of sexual abuse against S.D., concluding that she had "made a noncredible outcry of sexual abuse and that her answers were rehearsed and seemed like they were not her own words." CPS

did, however, add an allegation to the investigation of emotional abuse of S.D. by Nicole, which was found reason to believe. According to Edwards, S.D. "was indicating that her brain was hurting because she couldn't remember what she needed to say and that . . . if she didn't say the right things, that her mommy would be mad at her and that she wouldn't get angel wings and she could burn in hell."

CPS investigator Meredith Boren testified that sometime around Christmas 2011, she investigated a referral made by Nicole of physical abuse against S.D. by Christopher; Nicole claimed that S.D. had a cigarette burn on her shoulder and a fingerprint mark bruise. Boren eventually ruled out the allegations, in part because of S.D.'s "statements during her interview that she had not been burned and that her mother had told her to make those statements." CPS again added an allegation of emotional abuse of S.D. by Nicole based on Nicole's coaching of S.D. and found reason to believe that allegation. Boren later received another allegation of emotional abuse of S.D. by Nicole, and while that investigation proceeded, Nicole made allegations against Christopher of neglectful supervision and physical abuse of S.D. CPS found reason to believe for emotional abuse of S.D. by Nicole but ruled out the neglectful supervision and physical abuse allegations. Both Edwards and Boren opined that Nicole was not a truthful person.

The evidence demonstrates that Nicole was aware of CPS's multiple negative findings regarding abuse of S.D. by Christopher.  If the jury believed the State's rebuttal witnesses, then it could have rationally found that Nicole did not reasonably believe that retaining the children in violation of the divorce decree was immediately necessary to avoid imminent harm.  *See Zuliani*, 97 S.W.3d at 594; *Saxton*, 804 S.W.2d at 914.  We hold that the evidence is sufficient to support Nicole's convictions for interference with child custody and the jury's implied rejection of her necessity defense.  Accordingly, we overrule her sole point and affirm the trial court's judgments.

/s/ Bill Meier
BILL MEIER
JUSTICE

PANEL:  MEIER, GABRIEL, and SUDDERTH, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED:  April 14, 2016

8