

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-18-00327-CR

Jim Garcia **LONGORIA**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 226th Judicial District Court, Bexar County, Texas
Trial Court No. 2017CR7801
Honorable Mark R. Luitjen, Judge Presiding

Opinion by:     Sandee Bryan Marion, Chief Justice

Sitting:        Sandee Bryan Marion, Chief Justice
                Patricia O. Alvarez, Justice
                Liza A. Rodriguez, Justice

Delivered and Filed: February 13, 2019

AFFIRMED

Jim Garcia Longoria was convicted by a jury of murder and sentenced to life in prison. The only issue Longoria raises on appeal is that the trial court erred in denying his request to include the defense of necessity in the jury charge. We affirm the trial court's judgment.

### BACKGROUND

The evidence is undisputed that Longoria shot and killed the complainant, Gary Davila, on the side of a street. The testimony at trial established Davila worked odd jobs for Longoria. Around noon on the date of the murder, Longoria went to Davila's home to talk to him. Davila's

mother testified Longoria and Davila were both angry during the subsequent conversation. When Longoria began cussing at Davila, Davila's mother told Davila to come inside the house and told Longoria to leave.

R.R., Longoria's seven-year-old grandson, testified he was with his grandfather walking his dogs when they stopped at Davila's house. Davila and Longoria began arguing after Longoria asked Davila if he stole his lawnmower, and they left after Davila's mother told Davila to go inside. Sometime later, Longoria was driving them to get pizza and ice cream when they saw Davila walking down the street. Longoria stopped the car, and he and Davila began arguing. R.R. testified Davila did not have anything in his hands, but Longoria had a gun in his pocket which he removed while he was arguing with Davila. As Davila walked away from the car, R.R. testified Longoria exited the car and shot him. After shooting Davila, Longoria returned to the car and drove away.

Raul Venegas, who lived in the area of the shooting, testified he saw a man walk by his house and a car slowly following him on his video surveillance system. After seeing that, Venegas went to his window and continued observing the events. Venegas testified the driver of the car appeared to be yelling something at the man who was walking. The driver exited his car, and the two appeared to be arguing, but the man who was walking did not do anything threatening. The driver then pulled out a gun, shot the other man, and drove away.

Ray Zuniga, who also lived in the area of the shooting, testified he saw a black car following a man walking down the sidewalk. The driver exited the car, and Zuniga could hear the driver cursing at the other man who was "just shrugging his shoulders." Zuniga testified only the driver appeared to be angry. The driver then picked up his shirt, pulled out a gun, and shot the other man. Zuniga yelled for his family to go inside, and he saw the driver start to raise his gun toward him. Zuniga saw a kid in the car exit and grab the driver's leg. The driver and the kid

returned to the car and drove away. Zuniga testified the man who was shot did not do anything aggressive toward the driver before the shooting, and his hands were totally empty.

Longoria testified he hired Davila to do odd jobs. Davila told Longoria he was trying to get off drugs, but Longoria believed his addiction got worse. Eventually, Longoria no longer hired Davila to do any work. Longoria testified some of his equipment and tools started disappearing. On the day of the shooting, Longoria confronted Davila at Davila's house about a missing welder. Longoria testified he left after Davila became enraged. When Longoria later drove his grandson to pick up pizza and ice cream, he saw Davila walking on the street and decided to approach him to see if he had calmed down and to ask again about the welder. Longoria testified Davila became enraged, started shuffling his hands, and said "let's settle it right now." Given Davila's strength and Longoria's age and physical condition, Longoria testified he was afraid Davila would kill him if he attacked him, so he pulled out a gun and shot him once. Longoria testified he still had five or six shots in the gun, but only shot Davila once because he no longer felt threatened.

On cross-examination, Longoria testified he had the gun in his pocket from the walk earlier because he always carries his gun when he walks in the neighborhood. Longoria further testified he was not expecting anything bad to happen when he drove his grandson to the store for the pizza and ice cream. Longoria conceded he was illegally carrying the handgun but stated that he was unaware that it was illegal.

Longoria requested and was given instructions on self-defense and defense of a third person. At the charge conference, Longoria's attorney also requested an instruction on the defense of necessity, not as a defense to the murder charge, but as to whether Longoria was unlawfully carrying a weapon, contending:

> [Defense counsel]: . . . . What we anticipate the State to argue is that Mr. Longoria, that he was committing the offense of unlawfully carrying a weapon and that would defeat the self-defense. What we're saying is that at the time of the

incident, that it was necessary for him to carry the gun to defend himself against Mr. Davila. So you could say that the reason that he had to carry the weapon [was] because Mr. Davila had argued with him and things like that, to — to try to defeat the unlawfully carrying a weapon.

The trial court's denial of the requested instruction on necessity is the sole complaint raised on appeal.

## DISCUSSION

"Our first duty in analyzing a jury-charge issue is to decide whether error exists." *Ngo v. State*, 175 S.W.3d 738, 743 (Tex. Crim. App. 2005). "Then, if we find error, we analyze that error for harm." *Id*.

"It is well settled that a defendant has a right to an instruction on any defensive issue raised by the evidence, whether that evidence is weak or strong, unimpeached or contradicted, and regardless of what the trial court may think about the credibility of the evidence." *Sanchez v. State*, 400 S.W.3d 595, 598 (Tex. Crim. App. 2013) (internal quotation omitted). If the evidence, viewed in the light most favorable to the defendant, does not establish a defense, however, the defendant is not entitled to an instruction on the defense. *Ferrell v. State*, 55 S.W.3d 586, 591 (Tex. Crim. App. 2001).

In order to be entitled to an instruction on the defense of necessity, one of the elements the evidence must establish is that the defendant reasonably believed his conduct was "immediately necessary to avoid imminent harm." TEX. PENAL CODE ANN. § 9.22. "'Reasonable belief' means a belief that would be held by an ordinary and prudent person in the same circumstances as the defendant." *Stefanoff v. State*, 78 S.W.3d 496, 501 (Tex. App.—Austin 2002, pet. ref'd). "'Imminent' has been defined as ready to take place, near at hand, impending, hanging threateningly over one's head, menacingly near." *Henley v. State*, 493 S.W.3d 77, 89 (Tex. Crim. App. 2016) (internal quotation omitted). "Thus, imminent harm is harm that is ready to take

place—harm that is coming in the very near future." *Id*. Stated differently, "[h]arm is imminent when there is an emergency situation and it is 'immediately necessary' to avoid that harm." *Pennington v. State*, 54 S.W.3d 852, 857 (Tex. App.—Fort Worth 2001, pet. ref'd). "In other words, a split-second decision is required without time to consider the law." *Id*. "The justification defense of necessity applies when action is needed 'immediately' (i.e., now) to avoid 'imminent' harm (i.e., harm that is near at hand)." *Henley*, 493 S.W.3d at 89.

As previously noted, Longoria requested an instruction of the defense of necessity as to his unlawfully carrying a weapon, not as to the murder.[1] Thus, the evidence was required to establish Longoria reasonably believed his unlawfully carrying of a weapon was "immediately necessary to avoid imminent harm." No evidence was presented, however, to establish Davila posed a threat of "imminent" harm to Longoria while Longoria was driving to the store or even when Longoria exited his car. Instead, Longoria testified the gun was in his pocket from when he was previously walking in the neighborhood because he always carries his gun on such walks, and he was not expecting anything to happen when he drove to the store. Although Longoria testified that after he exited the car and the two men were talking, Davila's anger escalated, causing Longoria to fear being harmed, this was only after Longoria exited his car and was already unlawfully carrying the gun. This is no evidence that Longoria believed harm was imminent so he made a split-second decision to exit his car while unlawfully carrying the gun. Because the defense of necessity as to Longoria's unlawfully carrying of the weapon was not raised by the evidence, the trial court did not err in refusing to charge the jury on that defense.

---

[1] As Longoria's attorney anticipated, the jury was instructed Longoria's use of force was not justified with regard to his other defenses if he sought an explanation from or discussion with Davila concerning his differences with Davila while he was unlawfully carrying a weapon. The jury was further instructed, "A person commits the offense of unlawfully carrying a weapon if the person, intentionally, knowingly, or recklessly carries on or about his person a handgun if the person is not on the person's own premises or premises under his control or inside of or directly en route to a motor vehicle that is owned by the person or under the person's control."

## CONCLUSION

The trial court's judgment is affirmed.

Sandee Bryan Marion, Chief Justice

DO NOT PUBLISH