# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-19-00081-CR

**Manxfred Jose Gonzalez, Appellant**

**v.**

**The State of Texas, Appellee**

---

**FROM THE COUNTY COURT AT LAW NO. 1 OF WILLIAMSON COUNTY,
NO. 18-05107-1, THE HONORABLE BRANDY HALLFORD, JUDGE PRESIDING**

---

## M E M O R A N D U M   O P I N I O N

A jury convicted appellant Manxfred Jose Gonzalez of unlawful restraint, *see* Tex. Penal Code § 20.02, and the trial court sentenced him to 275 days in the county jail. On appeal, he complains that the trial court abused its discretion in denying his requested jury-charge instructions on necessity, confinement as justifiable force, and protection of life or health. We affirm the trial court's judgment of conviction.

### Standard of Review and Applicable Statutes

A defendant is "entitled to a jury instruction on a defensive issue if it is raised by the evidence, regardless of the strength or credibility of that evidence." *Farmer v. State*, 411 S.W.3d 901, 906 (Tex. Crim. App. 2013). In considering whether there was "some evidence adduced at trial to warrant" a requested instruction, we view the evidence in the light most favorable to the defendant. *Id*. The defendant need not testify, and a defense that calls for a jury

1

instruction "may be raised by the testimony of witnesses other than the defendant." *State v. Morales*, 844 S.W.2d 885, 892 (Tex. App.—Austin 1992, no pet.). "In determining whether evidence raises a defense, neither the credibility, source, or strength of the evidence is material." *Stefanoff v. State*, 78 S.W.3d 496, 499 (Tex. App.—Austin 2002, pet. ref'd). Instead, evidence raises an element of a defense if a rational juror could accept the evidence as proving that element. *Id.* If the evidence does not raise every element of an asserted defense, the trial court may refuse to grant a requested instruction. *Id.* When, as here, the issue was preserved by a timely request made during the charge conference, we must reverse if the charge error caused "some harm." *Jordan v. State*, 593 S.W.3d 340, 346 (Tex. Crim. App. 2020). "'Some harm' means actual harm and not merely a theoretical complaint," and we will reverse "if the error was calculated to injure the rights of the defendant." *Id.* at 347. "To assess harm, we must evaluate the whole record, including the jury charge, contested issues, weight of the probative evidence, arguments of counsel, and other relevant information." *Id.*

A person commits the offense of unlawful restraint if he intentionally or knowingly restrains another person. Tex. Penal Code § 20.02(a). "Restrain" is defined as the restriction of another person's movements without her consent so as to interfere substantially with her liberty, by moving the other person from one place to another or by confining her, and restraint is "without consent" if it is accomplished by the use of force, intimidation, or deception. *Id.* § 20.01(1)(A). "It is a defense to prosecution that the conduct in question is justified under [chapter 9 of the penal code]." *Id.* § 9.02. Appellant argues that he was entitled to jury instructions as to the justifications of necessity, confinement as justifiable force, and defense of life or health. The defense of necessity provides that conduct is justified if the defendant reasonably believes his conduct is immediately necessary to avoid imminent harm; "the

2

desirability and urgency of avoiding the harm clearly outweighed, according to ordinary standards of reasonableness, the harm sought to be prevented by the law proscribing the conduct"; and a legislative purpose to exclude the claimed justification does not otherwise plainly appear. *Id*. § 9.22. Confinement is justified when "force is justified by this chapter if the actor takes reasonable measures to terminate the confinement as soon as he knows he safely can unless the person confined has been arrested for an offense." *Id*. § 9.03. Finally, a person is justified in using force against another "when and to the degree he reasonably believes the force is immediately necessary to prevent the other from committing suicide or inflicting serious bodily injury to himself." *Id*. § 9.34(a).

**Summary of the Evidence**

Amber Estrella testified that she and appellant were living together in September 2018. Estrella had been fired from her job because of harassment by appellant's ex-wife and as a result was "struggling" and "really stressed out" about money. On the evening in question, Estrella and appellant were drinking together, and Estrella testified that she drank ten to twelve shots of vodka to the point she "[d]efinitely would be impaired" and "was throwing up." She started asking appellant questions about his ex-wife, which "sort of triggered my emotions as well as his emotions." Estrella then decided she wanted to go for a drive, which she likes to do when she is upset, so she picked up her keys and her cell phone, which she uses for directions when she drives, and stood to leave. Appellant told her not to drive and to "sit down, that [she was] drunk," but Estrella said that she is "stubborn" and that she got angry when appellant told her not to drive. She then "proceeded to get up and kept trying to leave while pushing him out of

3

the way or trying to get him out of my way," at which point appellant took away her keys and phone, grabbed her shoulders, pushed her onto the bed, and told her to calm down.

Estrella said that when appellant took her keys, she grew angrier and "forcibly" tried to leave the apartment, and appellant got between her and the door, grabbed her, and tried to stop her from leaving. At one point, Estrella pushed appellant into their boa constrictor's tank, and "he pushed me on the bed and was trying to make me relax." Estrella bit appellant's hand "really hard," but when appellant bit her on her back "very hard," Estrella stopped biting him. Estrella testified that she would pause fighting or struggling, appellant would "relent" or "ease up," and she would try to leave again, including trying to sneak out through the bathroom. Appellant kept stopping her from leaving, including putting her back into the bedroom, carrying her over his shoulder into the bedroom, or holding her down on the floor, all while Estrella kept screaming.

Someone at the apartment complex called the police, and Estrella said when they arrived, "I remember running to the door. I remember opening the door. And I remember crying. I remember telling them that I was bitten. And other than that I don't remember anything else." Estrella testified that although appellant told the police that the couple's cats had scratched his neck, she admitted to them that she had done it. Estrella also testified that she told an officer that she did not want to press charges but was told "you're not going to be pressing charges, we're going to be pressing charges which upset me even more because that wasn't the situation that I wanted." Estrella testified that appellant "was very concerned" about her and that he was wrongfully charged. She agreed when she was asked whether in her condition that night she "could pose a threat" to herself or others; said that if appellant had not acted as he did, "I

4

probably would have gotten myself hurt, put myself in jail or hurt a family"; and answered, "Absolutely," when asked if his restraining her was "necessary to prevent that from happening."

**Discussion**

For appellant to be entitled to an instruction on his defensive issues, the evidence, viewed in the light most favorable to him, had to raise an issue as to each element of each of the defenses. All of his asserted defenses have in common the element of immediacy, meaning that appellant must have reasonably believed that his conduct was necessary in the moment to stop some harm. *See* Tex. Penal Code §§ 9.03, .22, .34. The State argues that the evidence did not raise an issue as to "imminent harm" or "immediate necessity" and that, therefore, appellant was not entitled to his requested instructions. *See Kenny v. State*, 292 S.W.3d 89, 101 (Tex. App.— Houston [14th Dist.] 2007, pet. ref'd ) (record revealed "complete absence of immediate necessity or imminent harm" where defendant testified that he and victim had argued "for at least five minutes before he tied her wrists together when she attempted to exit his vehicle for the second time"; defendant failed to show that he decided to restrain victim "in a split-second without time to consider any legal alternatives, such as requesting her car keys"); *see also Fuentes v. State*, No. 11-05-00003-CR, 2006 WL 648343, at *2 (Tex. App.—Eastland Mar. 16, 2006, pet. ref'd) (not designated for publication) (no error to refuse necessity instruction when defendant wrestled victim for keys for twenty minutes, vehicle was not moving, and keys were not in ignition; evidence did not show defendant reasonably believed he had to "immediately assault the victim to prevent imminent harm"); *Jordan v. State*, No. 03-02-00041-CR, 2002 WL 31083349, at *2 (Tex.—Austin Sept. 19, 2002, no pet.) (not designated for publication) (defendant and victim struggled at residence, victim left and walked to convenience store,

5

defendant waited five minutes then drove to get her, and defendant and victim struggled again at store while defendant tried to force her into car; no error to refuse necessity instruction because victim was not on verge of driving away during first struggle at house, defendant had time to consider situation and take "less drastic steps" to stop victim from driving, no evidence showed that victim was in imminent peril at store when appellant arrived, and defendant "was not forced to make a split-second decision without time to consider the available options"). It further argues that the evidence did not suggest that appellant could reasonably have believed his conduct was necessary.

"'Imminent' means something that is immediate, something that is going to happen now," and "imminent harm contemplates a reaction to a circumstance that must be the result of a 'split-second decision [made] without time to consider the law.'" *Stefanoff*, 78 S.W.3d at 501 (quoting *Smith v. State*, 874 S.W.2d 269, 273 (Tex. App.—Houston [14th Dist.] 1994, pet. ref'd)); *see also Pennington v. State*, 54 S.W.3d 852, 857 (Tex. App.—Fort Worth 2001, pet. ref'd) ("'Imminent' means something that is impending, not pending; something that is on the point of happening, not about to happen"; "Harm is imminent when there is an emergency situation and it is 'immediately necessary' to avoid that harm"; and "a split-second decision is required without time to consider the law."). "[T]the unavailability of legal alternatives is not a requirement of the defense of necessity," *Pennington*, 54 S.W.3d at 859, but "even a defendant's sincere belief that his or her conduct is immediately necessary to avoid imminent harm is unreasonable as a matter of law if the undisputed facts demonstrate a complete absence of 'immediate necessity' or 'imminent harm' as those concepts are defined in the law," *Dewalt v. State*, 307 S.W.3d 437, 454 (Tex. App.—Austin 2010, pet. ref'd).

Estrella testified that her intention was to get in her car and drive; that she was definitely impaired, having drunk between ten and twelve shots; and answered, "Absolutely," when asked whether appellant's actions were necessary to keep her from driving impaired and probably hurting herself or someone else. However, although the record does not indicate the length of the altercation, it seems to have lasted longer than one or two minutes, given that it was still going on when the police arrived at the apartment in response to a neighbor's phone call, and Estrella testified that appellant took away her car keys early in the confrontation.[1] The record, viewed in the light most favorable to appellant, shows that after he took the keys, Estrella continued to try leave the apartment while appellant kept her physically confined in the apartment, but there was no evidence Estrella would have been at risk of "imminent" or "immediate" harm had she left the apartment without her keys or phone. Further, even if we could view Estrella's testimony as indicating that the ongoing altercation involved Estrella trying to regain her keys, an inference not supported by the testimony or other evidence, there is no evidence that there would have been any "imminent" harm if she had recovered the keys while in the apartment or that appellant could reasonably have believed it necessary to keep her in the apartment because she had regained the keys or had some other means of driving. Finally, appellant's arguments, both in the trial court and on appeal, focus on the specter of Estrella's

---

[1] The only evidence related to the accessibility of Estrella's car keys was her testimony on direct examination by the State that when she decided to go for a drive, appellant told her she was drunk and to sit down; that being "a stubborn person," she stood up and tried to leave "while pushing him out of the way"; that appellant "took my keys, he took my phone," and he "grabbed me from my shoulders and he pushed me on the bed and he was telling me you're drunk, you need to calm down." On cross-examination, Estrella again explained that she got angry when appellant initially told her not to drive, that she tried to get her keys and leave the apartment to drive, that he took her keys away, that she got angrier and "forcibly" tried to leave the apartment, and that appellant grabbed her and positioned himself between Estrella and the door, keeping her in the apartment and telling her to lie down because she was drunk.

intention to drive while intoxicated, not on an imminent harm that might have been presented by an intoxicated Estrella leaving the apartment on her own, such as falling down a flight of stairs.

Viewed in the light most favorable to appellant, the evidence does not raise an issue as to whether appellant could reasonably have believed that his continuing to keep Estrella in the apartment after he took away her keys—which the information stated he accomplished by holding her down with his hand and with his own body—was immediately necessary to prevent Estrella from driving while intoxicated or some other imminent harm. *See* Tex. Penal Code §§ 9.22(1), 9.34(a); *Dewalt*, 307 S.W.3d at 454; *see, e.g.*, *Wright v. State*, No. 05-09-00421-CR, 2010 WL 2560536, at *5 (Tex. App.—Dallas June 28, 2010, no pet.) (mem. op., not designated for publication) (defendant entitled to necessity instruction when he testified that he drove while intoxicated only because his wife had trouble breathing and passed out while she was driving, making defendant fear she might die and feel he had no choice but to drive); *Jordan*, 2002 WL 31083349, at *2 (defendant assaulted victim at residence and then by trying to force her into his truck several minutes after she walked alone to convenience store; defendant not entitled to defensive instruction because victim was not on verge of driving away during initial struggle, defendant had time to consider situation, and no evidence victim was in imminent peril at store). The trial court therefore did not err in refusing appellant's requested defensive instructions. We overrule appellant's issues on appeal.

## Conclusion

We have held that the trial court did not err in refusing appellant's requested jury instructions on necessity, confinement as justifiable force, and protection of life and health. We therefore affirm the trial court's judgment of conviction.

_____

Darlene Byrne, Chief Justice

Before Chief Justice Byrne, Justices Triana and Smith
  Dissenting Opinion by Justice Triana

Affirmed

Do Not Publish

Filed:   February 26, 2021