In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

NO. 09-14-00217-CR
_____


BRIAN ANDREW WILLIAMS, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 221st District Court
Montgomery County, Texas
Trial Cause No. 14-04-03806 CR

MEMORANDUM OPINION

A jury found Brian Andrew Williams (Williams) guilty of unlawful possession of a firearm by a felon. *See* Tex. Penal Code Ann. § 46.04(a)(1) (West 2011).[1] Williams pleaded "true" to an enhancement paragraph in the indictment

---

[1]In this Memorandum Opinion, we cite to the current version of the statute as the subsequent amendments do not affect the outcome of this appeal.

1

alleging he had a prior felony conviction.[2] The trial court sentenced Williams to ten years of confinement, with his sentence to run consecutive to the sentence for which he was currently serving parole. In two appellate issues, Williams argues that the trial court erred during voir dire in not allowing Williams's counsel the right to ask the venire panel questions concerning the defense of necessity, and that the trial court erred in not allowing an instruction on necessity and self-defense in the jury charge. Finding no error, we affirm the trial court's judgment.

GUILT/INNOCENCE PHASE OF THE TRIAL

After a recess was taken during voir dire, there was a discussion off the record and the following exchange occurred:

> THE COURT: Okay. We are outside the presence of the jury -- or the panel, the venire panel. And the Defendant's attorney has requested the opportunity to speak with the jury about necessity and possibly self[-]defense in some manner.
>
> And the Court's concern is whether or not the Defendant is going to take the stand. Because most of the time the only way you get a charge of necessity or self[-]defense is if the Defendant himself gets up there and tells what he was thinking and why he acted the way he did.
>
> In other words, he admits the action, but then he says, "here is why I did it." So my concern is . . . [defense counsel] has stated to me

[2]At trial, a document entitled "Stipulation of Evidence" was admitted into evidence. The document stated that Williams stipulates that "I am the same person who was convicted on October 18, 2005 in the 410th District Court of Montgomery County, Texas of a felony offense in Cause Number 05-01-00499. I further stipulate I will not be released from supervision under parole until the year 2020."

2

that he is not sure his client is willing to take the stand. He has advised his client not [sic]. His client has mentioned -- is going back and forth.

And so I guess my concern is if you do a big long voir-dire on necessity, it is the Court that has to make the decision as to whether to put necessity in the charge. My concern is it will give the jury an idea that there is a defense when there may not be.

Go ahead.

[Defense Counsel]: I am quoting from the Texas Criminal Practice Guide that says that there is a common-law defense self[-]defense in the possession of a firearm by a felon and that he has to have reasonable fear of his life or safety and there is a possibility that -- they have to make sure that -- one of the complaining witnesses did have a machete -- and that they were trespassing on his property.

Whether or not my client takes the stand right now is really up in the air. I really don't know. He changes his mind quite often, and at the present time I would say no. But there is a chance that he will, in fact, take the stand. So we would ask to at least be able to talk to the jury about it to see what their --

THE COURT: I guess my reluctance stems from the fact that there is no statutory defense to this charge. It is not written in the Code of Criminal Procedure or the Penal Code. The Penal Code does not address on this particular offense that there is a defense.

What says the State?

[State's Counsel]: The State would object. . . [T]he case[] I have referred us to . . . requires an admission to the conduct and the act and mental state before you get to the justification.

THE COURT: So at this point I am not making ruling [sic] on a determination of whether I am going to put it in the jury charge. I am just telling you I don't think it is proper at this time to ask the jury about this. This is more of an argument thing. But if we do reach this and I do put it in the charge, then you are able to address the jury at that time. At this time the request is denied.

At trial, Donald Avery (Donald) testified that in June 2013, he was a deacon at a church. The church received a call from Andre Francisco (Andre), a homeless man, asking for assistance. On June 27, 2013, Donald met with Andre and Andre's wife at a library and took them to a restaurant, where they discussed how the church could assist the couple. Andre explained to Donald that Andre and his wife had been living in the woods nearby, but because Andre's wife was having difficulty with the heat, she had been staying at the library. Donald testified that he helped secure a room for the couple at a motel until they could find employment or a place to stay. Donald drove Andre and his wife to the wooded area to retrieve "their belongings."

After taking the first load of "belongings" to the motel, Donald and Andre returned to retrieve the remainder of Andre's "belongings." As Donald and Andre were loading Donald's car, Williams pulled up in a car and asked them what they were doing. Donald testified that Andre told Williams it was, "none of [his] business." According to Donald, Andre's response agitated Williams and Williams informed Donald and Andre that he would be back. Donald testified that after the exchange he felt "uneasy," but Andre was "adamant about going in and getting the stuff." Donald testified that about five minutes later, as Donald and Andre were loading more things into Donald's vehicle, Williams returned. According to

4

Donald, Williams "hop[ped] out of the car with a gun and start[ed] yelling and screaming . . . talking about shooting and he was absolutely enraged and upset." Donald explained to the jury he was in fear for his life, that Williams was pointing the gun in their direction, and that Williams "started going up after Andre." Donald testified that he ran, thinking that Andre would follow. When Donald could not find Andre, Donald returned and hid in front of the car. According to Donald, Williams had Andre backed up against the vehicle, there was a gun in Andre's face, and Williams was yelling at Andre. Williams then appeared to calm down and Williams told Andre to get into Donald's car. Donald also told Andre to get into the car so they could leave. Williams got into his own car and left. Donald then drove Andre to the police station to report the incident. Donald asked the police to take them back in a police cruiser because he was afraid. Donald testified that at the time of the incident, Andre had in his possession a pocketknife that he had used to cut some strings that were holding up the tent, but that when they were confronted by Williams, Andre was not displaying any weapon and had nothing in his hands. According to Donald, Andre made no threats to Williams either time they interacted that day, nor was Andre aggressive with his knife towards Williams. Donald testified that he and Andre identified Williams's car for the police.

Officer Jose Herrera with the Conroe Police Department testified at trial. Officer Herrera testified that he was on duty the evening of June 27, 2013, when Donald and Andre walked into the police station to report an incident that occurred in Montgomery County. Donald and Andre reported that their lives or welfare had been threatened and that the perpetrator had displayed a shotgun during the confrontation that occurred less than a mile down the street. According to Officer Herrera, Donald and Andre appeared alarmed and distressed by the incident.

Officer Herrera explained at trial that Donald and Andre told him that Andre still had some "belongings" at the location where the incident occurred. Officer Herrera, Sergeant Kelemen, and Officer Westbrook took Donald and Andre back to the location to collect Andre's things. Officer Herrera testified that he believed he "patted down" Donald and Andre for weapons before transporting them in his patrol car. They retrieved a clear tote containing clothes next to the roadway but did not go into the woods.

Officer Herrera testified that Donald and Andre pointed out the vehicle Williams was driving earlier that day and it was parked at Williams's residence at 416 Old Magnolia, five or six houses down from the location of the altercation. After the officers drove Donald and Andre back to the police department, the officers returned to the residence where the vehicle was parked to speak to the

6

vehicle's owner. From the information the officers gathered from Donald and Andre, Herrera believed that the men may have been trespassing on Williams's family's property. To Officer Herrera's knowledge, the Conroe Police had never responded to a call reporting trespassers at that location. Herrera testified that his intent in speaking with Williams was not to arrest him, but to "see what was going on" and to inform him that if someone is trespassing on his property he should "call the police."

According to Officer Herrera, a woman answered the door and Herrera asked to speak to the vehicle's owner. The woman then called out to "Brian." Williams came out and Herrera asked Williams if he had had any interaction with people down the street. Williams told Herrera that Williams was the owner of the vehicle and he had "run off" some homeless people from his family's property. In Officer Herrera's opinion, Williams appeared to be withholding information and Williams was hesitant in giving details regarding the incident. Officer Herrera explained at trial that he asked Williams in several different ways how he got the people off the property and Williams would not answer. According to Williams, he saw the people coming from his family's property, asked them, "Hey, what are you doing?" and they answered, "None of your business." Williams told Herrera that he came back to his house and then went back to the location and ran them off.

7

Herrera explained at trial that the only information he had regarding ownership of the property was that Williams told the Officer that the property was owned by Williams's family.

During the investigation, Sergeant Kelemen retrieved the gun from inside the residence. Williams told Herrera that he had the gun for about two months and he was keeping it for a family member, to keep that family member out of trouble. Herrera requested that dispatch run Williams's identification, and Herrera learned that Williams had a felony conviction and that he was on parole until 2020.

Officer Herrera placed Williams under arrest for unlawful possession of a firearm by a felon. At trial, Officer Herrera explained that although he did not see Williams with the gun, did not interview neighbors to see if they witnessed Williams with a gun, and did not send the gun off for DNA or fingerprint testing, based on his training and experience he had no doubt that Williams was in possession of a firearm that day and while on parole. Officer Herrera was wearing a "body camera" when he interviewed Williams. The video recording from the "body camera" was played for the jury.

Sergeant James Kelemen with the Conroe Police Department testified that he responded with Officer Westbrook and Officer Herrera to a disturbance call off Old Magnolia Road on the night of June 27, 2013. Sergeant Kelemen explained a

8

female answered the door. Kelemen said the female explained she was the suspect's girlfriend or fiancée, she lived at the residence with the suspect, and that she had knowledge of the reported incident. Sergeant Kelemen spoke with her about the incident. Kelemen could not see the gun but the female offered to get it. Kelemen told her he would follow her to the gun and she led him to it. Kelemen retrieved a shotgun from behind an armoire in the front bedroom of the residence. Kelemen believed that the shotgun had been used in the incident because the complainants had described the weapon as a "long gun." He only went to the weapon and did not search any other rooms. Sergeant Kelemen testified that his belief, based on his training and experience and coupled with Officer Herrera's investigation, was that Williams possessed the firearm that day. Kelemen explained that because Williams was on parole for a felony, he was not allowed to have access to any firearms and that he is not allowed to have a firearm in his home.

The defense called Beverly Mercer, Williams's mother, to testify. She testified that at one time Williams lived at 416 Old Magnolia Road in Conroe. After being shown photographs of the location of the altercation and neighboring woods, Mercer could not say with accuracy where her family's property lines were. Mercer testified that a document from the Montgomery County Central

9

Appraisal District website showed that Williams's grandmother was the owner of the property in question, and the document was admitted into evidence. Mercer testified that she had never seen Williams with a gun, but that she was not in the area the night of the incident.

During the trial, the trial court, outside the jury's presence, discussed defendant's request for a jury charge on necessity as follows:

> The defense has also asked for a proposed charge on necessity because he is asserting that the complainant and the complainant's friend trespassed on the property apparently owned by the Defendant. I have no evidence before me, No. 1, that this property was owned by the Defendant. I have nothing before me. His family may have owned it, maybe. There has been an allusion to that fact. I have seen nothing.
> Number 2, in order to get a charge on necessity or self[-]defense, I feel like there needs to be more evidence than what we have heard. I don't feel like the evidence is lending itself to a charge of necessity. And obviously, self[-]defense and necessity, no deadly force is allowed unless you believe your life or the life of another is at stake. There has been no evidence of that.
> That fact that he may or may not have trespassed on property I don't believe gives rise to the use of deadly force or shoving a gun in somebody's face. I think that is -- it would be different if this was his homestead and he was approaching his house. This was a somewhat -- it looked deserted on the pictures -- kind of an overgrown wooded area. It didn't appear to belong to anybody.
> So I think there is [sic] some disputed facts, and I think that necessity -- if there is something that is raised after the State rests, if you put on evidence that raises it, please reassert this. But right now I don't feel as if the evidence has raised this.

Subsequently, the trial court held a formal charge conference in which the defense objected to the trial court's charge on the basis that it did not include the requested necessity instruction.

ANALYSIS

Williams raises two issues on appeal. In his first issue, Williams argues the trial court erred during voir dire by failing to allow defense counsel to ask the venire panel questions concerning the defense of necessity. In his second issue, Williams contends the trial court erred during the jury charge conference by failing to allow Williams a jury charge on necessity and self-defense. According to Williams, the trial court's denial of his request for a necessity instruction violated his constitutional rights under Article I, section 10 of the Texas Constitution because he was denied effective assistance of counsel. Tex. Const. art. I, §10.

The right to counsel under Article 1, Section 10 of the Texas Constitution encompasses the right to pose proper questions during voir dire examination. *See Jones v. State*, 223 S.W.3d 379, 381 (Tex. Crim. App. 2007). When an appellant challenges a trial court's limitation of his voir dire, the reviewing court analyzes this challenge under an abuse-of-discretion standard, "the focus of which is whether the appellant proffered a proper question concerning a proper area of inquiry." *Caldwell v. State*, 818 S.W.2d 790, 793 (Tex. Crim. App. 1991),

11

*overruled on other ground by Castillo v. State*, 913 S.W.2d 529, 532-35 (Tex. Crim. App. 1995). A trial court has broad discretion over jury selection, including the right to impose reasonable limits on the voir dire examination. *Sells v. State*, 121 S.W.3d 748, 755 (Tex. Crim. App. 2003). We will not disturb the trial court's ruling on the propriety of a particular voir dire question absent an abuse of discretion. *Id.* A trial court abuses its discretion when it prohibits a proper question about a proper area of inquiry. *Id.* A question is proper if it seeks to discover a juror's views on an issue applicable to the case. *Id.*

In order to decide whether the trial court erred in prohibiting a voir dire question, the reviewing court "must first determine if the appellant proffered a proper question" -- one that is both "appropriately phrased and relevant." *Caldwell*, 818 S.W.2d at 793-94. If an appellant does not actually frame a question to the trial court, nothing is preserved for review. *Id.* at 794; *see also Cockrum v. State*, 758 S.W.2d 577, 584-85 (Tex. Crim. App. 1988). An appellant does not preserve error by informing the trial court of the general subject area from which he wishes to propound questions. *Sells*, 121 S.W.3d at 756; *Caldwell*, 818 S.W.2d at 794. In order to preserve error as to the improper limitation of voir dire, an appellant "must show that he was prevented from asking *particular* questions that were proper." *See Sells*, 121 S.W.3d at 756 (emphasis in original). "That the trial court generally

12

disapproved of an area of inquiry from which proper questions could have been formulated is not enough because the trial court might have allowed the proper question had it been submitted for the court's consideration." *Id*.; *see also Shannon v. State*, 942 S.W.2d 591, 596 (Tex. Crim. App. 1996) ("[B]ecause appellant never set out a specific question he wanted to ask, we cannot determine whether that particular question would have been proper."); *Easterling v. State*, 710 S.W.2d 569, 575-76 (Tex. Crim. App. 1986) ("Before we can determine if the trial court has abused its discretion by improperly restricting the voir dire examination, it is necessary for the record to reflect what questions the defendant desired to ask the jury panel.").

Here, the record does not reflect what particular question or questions Williams's counsel would have asked the venire panel. It reflects only that Williams's counsel requested that he be able to question the venire panel about the general areas of the defense of necessity and self-defense. Furthermore, defense counsel was allowed to examine the jury panel about "protecting one's property." Without knowing what particular questions Williams would have asked the panel, we cannot determine whether the questions would have been proper and whether the trial court would have abused its discretion had it denied such questions.

Because Williams has not shown that he was prevented by the trial court from asking particular, proper voir dire questions, we overrule his first issue. *See id.*

With respect to William's second issue, he argues that the trial court erred in refusing to allow Williams a jury charge on necessity and self[-]defense. "The issue of the existence of a defense is not submitted to the jury unless evidence is admitted supporting the defense. Tex. Penal Code Ann. § 2.03(c). Generally speaking, a defendant is entitled to a jury instruction on every defensive issue raised by the evidence. *Allen v. State*, 253 S.W.3d 260, 267 (Tex. Crim. App. 2008). A defense is supported or raised by the evidence "if there is some evidence, from any source, on each element of the defense that, if believed by the jury, would support a rational inference that the element is true." *Shaw v. State*, 243 S.W.3d 647, 657-58 (Tex. Crim. App. 2007). The defendant bears the burden of showing some evidence exists to support each element of the defense. *Juarez v. State*, 308 S.W.3d 398, 404 (Tex. Crim. App. 2010); *Shaw*, 243 S.W.3d at 657. When reviewing a trial court's decision to deny a requested defensive instruction, "we view the evidence in the light most favorable to the defendant's requested submission." *Bufkin v. State*, 207 S.W.3d 779, 782 (Tex. Crim. App. 2006). A trial court may refuse an instruction on a defensive theory if the issue was not raised by the evidence. *See Shaw*, 243 S.W.3d at 657-58.

14

In order to preserve error relating to a jury charge, there must either be an objection or a requested charge. *Vasquez v. State*, 919 S.W.2d 433, 435 (Tex. Crim. App. 1996). The requested charge must be in writing or dictated to the court reporter. *Id*. (citing Tex. Code Crim. Proc. Ann. art. 36.15). The record includes no evidence that Williams submitted a jury charge containing an instruction on self-defense or that he dictated one into the record at trial.[3] Accordingly, to preserve his point of error regarding the trial court's failure to include a self-defense instruction, Williams was required to make a specific objection to the trial court's charge. *See* Tex. Code Crim. Proc. Ann. art. 36.14 (West 2007) (defendant must distinctly specify each ground of objection to the charge). To properly preserve an issue for appellate review, there must be a timely objection that specifically states the legal basis for the objection. Tex. R. App. P. 33.1; *Rezac v. State*, 782 S.W.2d 869, 870 (Tex. Crim. App. 1990).

During the charge conference, when asked whether the parties had any objections to the charge, defense counsel indicated that he had no objections other than the objection to the lack of a necessity instruction. This objection does not specifically raise an objection regarding the lack of a "self-defense instruction." Williams failed to preserve any error with regard to his complaint, that he was

---

[3]On appeal, the parties disagree as to whether self-defense is available as a matter of law to justify the possession of a firearm by a felon.

entitled to a self-defense instruction in the jury charge. However, Williams did specifically make an objection regarding a necessity defense.

Therefore, we must determine whether the evidence raised a necessity defense. The defense of necessity is defined by the Penal Code as a justification for otherwise unlawful acts. Conduct is justified if:

> (1) the actor reasonably believes the conduct is immediately necessary to avoid imminent harm;
> (2) the desirability and urgency of avoiding the harm clearly outweigh, according to ordinary standards of reasonableness, the harm sought to be prevented by the law proscribing the conduct; and
> (3) a legislative purpose to exclude the justification claimed for the conduct does not otherwise plainly appear.

Tex. Penal Code Ann. § 9.22 (West 2011). "The requirements of subsection 9.22(1) and (2) must be satisfied by evidence, while subsection (3) presents a question of law." *Pennington v. State*, 54 S.W.3d 852, 857 (Tex. App.—Fort Worth 2001, pet. ref'd). Additionally, "a defendant must admit to the conduct—the act and the culpable mental state—of the charged offense to be entitled to a necessity instruction." *Juarez*, 308 S.W.3d at 399. A "reasonable belief" is one "that would be held by an ordinary and prudent man in the same circumstances as the actor." Tex. Penal Code Ann. § 1.07(a)(42) (West Supp. 2014). "'Imminent' means something that is impending, not pending; something that is on the point of happening, not about to happen." *Pennington*, 54 S.W.3d at 857. "Harm is

16

imminent when there is an emergency situation and it is 'immediately necessary' to avoid that harm." *Id.* "In other words, a split-second decision is required without time to consider the law." *Id.*

"Evidence of a generalized fear of harm is not sufficient to raise the issue of imminent harm." *Brazelton v. State*, 947 S.W.2d 644, 648 (Tex. App.—Fort Worth 1997, no pet.). If undisputed facts indicate a complete absence of immediate necessity of imminent harm, then a defendant's belief that this conduct is immediately necessary to avoid imminent harm is unreasonable as a matter of law. *Dewalt v. State*, 307 S.W.3d 437, 454-55 (Tex. App.—Austin 2010, pet. ref'd).

Williams argues that his defense "was predicated on the fact that he reasonably believed that the complaining witness was in possession of a Machete, or at least as co[rr]ob[o]rated" by Donald's testimony that he saw Andre had a pocket knife. Williams did not testify at trial. The trial court, in precluding questions related to the necessity defense during voir dire, explained that at that point in time the necessity defense was not applicable to the case and reserved his ruling on whether the charge would include the requested necessity instruction, but the court also stated that "if we do reach [the necessity defense] and I do put it in the charge, then you are able to address the jury at that time."

The evidence presented at trial indicates Williams inquired as to what Donald and Andre were doing and Andre responded, "none of your business[.]" Donald testified that Williams left and then returned with a shotgun, pointed the gun in Andre's and Donald's direction, and Donald fled. Williams was yelling, backed Andre up to Donald's vehicle, and held the gun in Andre's face. There was no evidence that Andre or Donald threatened Williams or that they had any weapons, other than Donald's testimony that Andre had a pocketknife that he used to cut some strings that were holding up the tent. Donald stated that when they were confronted by Williams, Andre was not displaying any weapon. The facts and evidence would not support the submission of a necessity instruction, nor does the record demonstrate that Williams encountered an "emergency situation" necessitating a "split-second decision made without time to consider the law." *See Dewalt*, 307 S.W.3d at 454-55. The evidence did not raise the necessity defense, and the trial court did not abuse its discretion by refusing a jury instruction on the issue. Issue two is overruled.

Having overruled both issues, we affirm the trial court's judgment.

AFFIRMED.

_____
LEANNE JOHNSON
Justice

18

Submitted on December 3, 2014
Opinion Delivered July 15, 2015
Do Not Publish

Before McKeithen, C.J., Horton and Johnson, JJ.