

# NUMBER 13-18-00586-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

BETHANY GRACE MACIEL,                                                          Appellant,

v.

THE STATE OF TEXAS,                                                          Appellee.

### On appeal from the County Court at Law No. 1
### of Brazos County, Texas.

# OPINION ON REMAND

### Before Justices Benavides, Tijerina, and Peña
### Opinion on Remand by Justice Tijerina

This case is on remand from the Texas Court of Criminal Appeals. On direct

appeal, we affirmed the trial court's denial of a necessity instruction on the basis that

appellant Bethany Grace Maciel did not admit to committing the offense of driving while

intoxicated (DWI); thus, she was not entitled to the instruction.[1] *See Maciel v. State*, No. 13-18-00586-CR, 2020 WL 4035513 (Tex. App.—Corpus Christi–Edinburg 2020) (mem. op., not designated for publication), *rev'd*, 631 S.W.3d 720 (Tex. Crim. App. 2021). On October 6, 2020, the Texas Court of Criminal Appeals reversed our judgment and remanded the matter so that we could conduct a harm analysis regarding the trial court's failure to provide the jury with a necessity instruction. *See Maciel v. State*, 631 S.W.3d 720, 726 (Tex. Crim. App. 2021). We affirm.[2]

## I. BACKGROUND

On January 31, 2016, Maciel, her brother Jonathan, and his wife were coming back from a night out drinking at a bar in Northgate (a local complex in College Station). It was undisputed that all three were intoxicated.[3]

At trial, Officer Philip Shaw with the Texas A&M University Police Department testified that around 12:55 a.m., he located Maciel's vehicle stopped in the middle lane of traffic. He made contact with Maciel in the driver's seat while the engine was still running, and he smelled a burning mechanical odor emanating from the vehicle. After failing field sobriety tests (SFSTS), Maciel was arrested for DWI.

Maciel requested that the trial court instruct the jury on the defense of necessity. The State responded that Maciel could not receive the instruction that she was driving while intoxicated out of necessity because she argued that she was not operating the

---

[1] A jury convicted Maciel of DWI with an alcohol concentration level of 0.15 or more, a Class A misdemeanor. *See* TEX. PENAL CODE ANN. § 49.04(d). The trial court assessed punishment at twenty days in jail and a $2,500 fine.

[2] This case is before this Court on transfer from the Tenth Court of Appeals in Waco pursuant to a docket-equalization order issued by the Supreme Court of Texas. *See* TEX. GOV'T CODE ANN. § 73.001.

[3] Maciel's blood draw revealed her BAC was .234 g/100mL.

2

vehicle. The trial court denied Maciel's request. On appeal, we held that the trial court did not err in refusing the jury charge on necessity because Maciel's defense was that she did not operate the vehicle. The court of criminals appeals determined that Maciel was nevertheless entitled to the instruction because "a jury could reasonably infer that [Maciel] operated a motor vehicle while intoxicated" without an admission from her based on the "totality of [her] defensive evidence," which included Officer Shaw's testimony and his body cam video. *Maciel*, 631 S.W.3d at 725. We now conduct a harm analysis.

## II. SCOPE OF REVIEW

The court of criminal appeals concluded that Maciel's "testimony was sufficient to admit commission of DWI," and that "a jury could reasonably infer that [Maciel] operated a motor vehicle while intoxicated because she reasonably believed that doing so was immediately necessary to avoid imminent danger." *Id.* The dissent appears to conclude that because the court of criminal appeals found the evidence sufficient to *raise* the affirmative defense of necessity, that same evidence must be sufficient to find harm under the law of the case doctrine. However, the issue of whether Maciel was *harmed* by the trial court's denial of the necessity instruction was not properly before the Court. *See id.* The aforementioned statements were limited to the narrow issue of whether she was *entitled* to a necessity instruction. *See id.* Therefore, we cannot conclude that the high court has already determined that the record contains sufficient evidence to find actual harm because a court's review for error in the context of a denial of a necessity instruction cannot substitute for a court's review for harm. *See Campbell v. State*, 644 S.W.3d 240, 254 (Tex. Crim. App. 2022) (providing that a harm analysis requires a consideration of the full *Almanza* factors in view of the totality of the record); *Almanza v. State*, 686 S.W.2d

3

157, 171 (Tex. Crim. App. 1985) (op. on reh'g) (setting out how we analyze harm in jury charge error).

In assessing whether Maciel was entitled to the instruction, the Court viewed the evidence in the light most favorable to the requested instruction, as it was required to do based on extensive authority. *See Rodriguez v.* State, 629 S.W.3d 229, 231 (Tex. Crim. App. 2021) (*Rodriguez I*); *Dugar v. State*, 464 S.W.3d 811, 821–22 (Tex. App.—Houston [14th Dist.] 2015, pet. ref'd). A defendant is entitled to an affirmative defense when a defendant shows the "minimum quantum of evidence necessary to support a rational inference." *Rogers v. State*, 664 S.W.3d 843, 849 (Tex. Crim. App. 2022). However, the pertinent authority on assessing whether a defendant is harmed by the trial court's failure to include an instruction in the jury charge requires us to apply the test as articulated in *Almanza. See* 686 S.W.2d at 171. This test does not require the Court to view the evidence in the light most favorable to the defense. *See id.* Thus, while evidence may support a conclusion that the defendant is entitled to an affirmative defense, we disagree with the dissent that the "minimum quantum of evidence" in assessing error automatically triggers a finding of harm. *See id.* (an erroneous jury charge does not result in automatic reversal of a conviction); *see also Fox v. State*, No. 13-03-230-CR, 2006 WL 2521622, at *3 (Tex. App.—Corpus Christi–Edinburg Aug. 31, 2006, pet. ref'd) (mem. op., not designated for publication) ("An erroneous or incomplete jury charge, however, does not result in automatic reversal of a conviction."). Simply put, while a "minimum quantum of evidence" may be sufficient to entitle a defendant to an affirmative defense instruction, it may not be sufficient to warrant the finding of harm under *Almanza. See Maciel*, 631 S.W.3d at 726 (Newell, J., concurring) ("When conducting a harm analysis, the reviewing

4

court makes its own assessment as to what degree of likelihood exists as to the prejudicial or non-prejudicial impact of a particular error."). If the trial court's failure to include a necessity defense in the jury charge clearly or plainly harmed Maciel, the Court of Criminal Appeals would have reached the issue under the theory of judicial economy. *See Jordan v. State*, 593 S.W.3d 340, 346 (Tex. Crim. App. 2020) (stating that ordinarily the Court would not reach an issue the appellate court did not address "if the resolution of the issue is 'clear' or 'plain,' then judicial economy justifies this Court in reaching the issue in the first instance"); *Davison v. State*, 405 S.W.3d 682, 691–92 (Tex. Crim. App. 2013) (finding that the correct resolution of harm analysis was "clear," so judicial economy justified this Court in addressing it rather than remanding to the court of appeals); *Johnston v. State*, 145 S.W.3d 215, 224 (Tex. Crim. App. 2004) ("plainly harmless" error could be reviewed in first instance by this Court). Because the court of criminal appeals did not conduct a harm analysis and did not hold that Maciel was harmed by the denial of a necessity instruction, we disagree with the dissent that we are constrained by the law of the case doctrine. *See State v. Swearingen*, 424 S.W.3d 32, 38 (Tex. Crim. App. 2014). Accordingly, we will conduct a harm analysis—as we were instructed to do. *See Rodriguez v. State*, 524 S.W.3d 389, 391 (Tex. App.—Houston [14th Dist.] 2017, pet. ref'd) (*Rodriguez II*) ("Although the absence of an instruction for a confession-and-avoidance defense, such as necessity or self-defense, is often harmful because the appellant admits all elements of the offense, we must always perform a record-specific analysis for harm.").

## III. STANDARD OF REVIEW

5

When jury charge error is preserved at trial, we must reverse if the error caused some harm. *Reeves v. State*, 420 S.W.3d 812, 816 (Tex. Crim. App. 2013); *Almanza,* 686 S.W.2d at 171. "Some harm" means actual harm and not merely a theoretical complaint. *Sanchez v. State*, 376 S.W.3d 767, 775 (Tex. Crim. App. 2012). Although there is no burden of proof associated with the harm evaluation, reversal is required if the error was calculated to injure the defendant's rights. *Reeves*, 420 S.W.3d at 816. Failure to instruct on a confession-and-avoidance defense is rarely harmless "because its omission leaves the jury without a vehicle by which to acquit a defendant who has admitted to all the elements of the offense." *Rogers v. State*, 550 S.W.3d 190, 192 (Tex. Crim. App. 2018). But when "a record reveals a risk of harm that is so small that it may properly be characterized as not 'remotely significant,' or where the risk of harm is 'almost infinitesimal,' any harm resulting from the error is only theoretical harm." *French v. State*, 563 S.W.3d 228, 235–36 (Tex. Crim. App. 2018).

"The harm evaluation entails a review of the whole record, including the jury charge, contested issues, weight of the probative evidence, arguments of counsel and other relevant information." *Rogers*, 550 S.W.3d at 192; *Almanza*, 686 S.W.2d at 171. "In ascertaining whether there is harm, appellate courts 'focus on the evidence and record to determine the likelihood that the jury' would have concluded that the defense applied had it been given the instruction." *Chase v. State*, 418 S.W.3d 296, 301 (Tex. App.—Austin 2013), *aff'd*, 448 S.W.3d 6 (Tex. Crim. App. 2014) (citing *Wooten v. State*, 400 S.W.3d 601, 606 (Tex. Crim. App. 2013)).

## IV.    NECESSITY

Section 9.22 of the penal code provides the basic two-prong test that a defendant must satisfy to prevail on the defense of necessity. *See* TEX. PENAL CODE ANN. § 9.22. First, a defendant must present evidence that the defendant reasonably believed the conduct is "immediately necessary to avoid imminent harm." *See id.* § 9.22(1); *Pennington v. State*, 54 S.W.3d 852, 857 (Tex. App.—Fort Worth 2001, pet. ref'd). "Harm is imminent when there is an emergency situation and it is 'immediately necessary' to avoid that harm." *Pennington*, 54 S.W.3d at 857. "Imminent" means "something that is immediate, something that is going to happen now." *Kelso v. State*, 562 S.W.3d 120, 132 (Tex. App.—Texarkana 2018, pet ref'd) (internal quotations omitted). Second, the statute further requires the desirability and urgency of avoiding the harm to "clearly outweigh, according to ordinary standards of reasonableness, the harm sought to be prevented by the law proscribing the conduct." TEX. PENAL CODE ANN. § 9.22(2).

## V.    DISCUSSION

Maciel does not refer to any of the *Almanza* factors, does not cite the two-prong test set out in § 9.22, and does not apply any caselaw to the facts in this case to support the position that the trial court's error harmed her. *See* TEX. R. APP. P. 38.1(i) ("The brief must contain a clear and concise argument for the contentions made, with appropriate citations to authority and to the record."). Nonetheless, we will address the factors below.

### A.    Contested Issues and Weight of the Probative Evidence

We must review the elements in § 9.22 to determine whether Maciel was harmed from the absence of a necessity instruction. *See Rodriguez II*, 524 S.W.3d at 393 (reviewing the elements of § 9.22 for a harm analysis after assuming without deciding

that the trial court erred in denying a necessity instruction); *see also Fox*, 2006 WL 2521622, at *3 (explaining that in our harm analysis we must consider whether the "appellant presented evidence that he reasonably believed that a specific harm was imminent"). The jury should have been instructed that the unlawful conduct was justified if: (1) the actor reasonably believed the conduct was immediately necessary to avoid imminent harm; and (2) the desirability and urgency of avoiding the harm clearly outweigh, according to ordinary standards of reasonableness, the harm sought to be prevented by the law proscribing the conduct. *Rodriguez II*, 524 S.W.3d at 393; *see* TEX. PENAL CODE ANN. § 9.22(1).

Regarding the first factor in § 9.22, we analyze whether there was evidence that Maciel reasonably believed her conduct was "immediately necessary to avoid imminent harm," such that Maciel was harmed. *See* TEX. PENAL CODE ANN. § 9.22(a). The evidence supporting this factor is the following: Maciel testified that she was scared because all three intoxicated individuals were stopped in the middle of the road, she was worried about her brother, and she felt like it was a dangerous situation. She then climbed over from the passenger's seat to the driver's seat to try to move the car to safety.

### i) "Reasonable Belief" Unreasonable as a Matter of Law

"[A] defendant's sincere belief that his conduct is immediately necessary to avoid imminent harm is unreasonable as a matter of law if the undisputed facts demonstrate a complete absence of 'immediate necessity' or 'imminent harm' as legally defined." *Murkledove v. State*, 437 S.W.3d 17, 25 (Tex. App.—Fort Worth 2014, pet. denied). Maciel clarified that she did not remember what she was thinking that night; she did not feel like she was "all right to drive at that point"; she did not fully understand what was

8

going on; she did not remember taking the SFSTs; the details of that night were "fuzzy"; and she did not know that she did anything wrong. Maciel stated that she was "having trouble pulling over," and she even attempted to switch gears during the traffic stop, which Officer Shaw instructed her not to do. When Officer Shaw asked Maciel several times where she was coming from or where she was traveling, Maciel could not recall. In addition, Maciel could not provide Officer Shaw with her insurance, mistakenly handing him her registration instead. Officer Shaw questioned whether she had suffered any injuries, and Maciel responded, "um a little bit, but not really." When Officer Shaw asked what kind of head injuries she suffered, Maciel held her hand up to her head, patted her head, and stated, "I had one in my head."

Maciel admitted she had "one or two drinks," but she could not recall where, and when Officer Shaw questioned when Maciel last consumed alcohol, she first stated "possibly a few hours ago," which according to Maciel was "before twelve noon" even though it was a little after midnight. In the video, some of her statements are incoherent, she cannot stand still, and she does not seem to comprehend what Officer Shaw is requesting when she is undergoing the SFSTs. Maciel was unable to state the hour, and she thought it was around 3 a.m. When Officer Shaw asked Maciel if she had any drugs, Maciel responded, "No, I behaved," and swore she only had one or two drinks.[4]

Officer Shaw described Maciel as having a blank stare on her face from time to time as she was "trying to figure out where she was at and looking down the road," and the video corroborates his version of events. Officer Shaw had to reinstruct her at least twelve times to follow his directions because it appears she was unable to understand his

---

[4] Maciel further admitted she should be wearing corrective lenses although she was not.

9

simple instructions. In fact, Maciel thanked Officer Shaw for not placing her under arrest even after she was in handcuffs. Maciel emphasized "she did not know what was going on." *See* TEX. PENAL CODE ANN. § 1.07(42) ("A 'reasonable belief' is one that would be held by an ordinary and prudent person in the same circumstances as the actor."). Therefore, because she did not have a normal use of her mental or physical faculties, we cannot conclude that the evidence supports a finding that Maciel had a "reasonable" belief that she was in imminent danger excusing her drunken driving. *See* TEX. PENAL CODE ANN. § 1.07(42); *see also Fitzgerald v. State*, 782 S.W.2d 876, 885 (Tex. Crim. App. 1990) (providing that reasonableness is determined from the defendant's viewpoint at the time of the conduct).; *cf. Fox*, 2006 WL 2521622, at *3 ("Viewed from appellant's standpoint at the time he acted, we find appellant presented evidence that he reasonably believed his conduct was immediately necessary to avoid the imminent harm."). Maciel could not have had a "sincere belief that h[er] conduct [was] immediately necessary to avoid imminent harm," because such a belief under these facts is "unreasonable as a matter of law," in light of her own statements at trial and her disorientation at the scene. Therefore, no rational person could have determined that Maciel "reasonably believed" her conduct of driving while intoxicated was immediately necessary, such that Maciel was harmed by the omission of a necessity instruction. *See Fitzgerald*, 782 S.W.2d at 885.

### ii) Imminent Harm Unsupported by Evidence

Moreover, the undisputed facts demonstrate a complete absence of "immediate necessity" or "imminent harm" as that term is legally defined because there was no evidence of anything about to "happen now." *See Kelso*, 562 S.W.3d at 132. We recognize the potential danger posed by a stopped car in the road at night; however,

10

Officer Shaw testified: "typically, Northgate is quite dead on a Sunday night." He further explained that there was no traffic on the road at this particular time. Officer Shaw testified that at times he prefers to move intoxicated individuals off the roadway to conduct sobriety tests, however, on this particular night he did not think it was necessary.

"Imminent harm must be shown by affirmative evidence." *Kelso*, 562 S.W.3d at 132; *see also Daugherty v. State*, No. 06-18-00167-CR, 2019 WL 2195256, at *1 (Tex. App.—Texarkana May 22, 2019, pet. ref'd) (mem. op., not designated for publication) ("[A] necessity defense requires there to be, among other proof, evidence of a specific imminent harm on the occasion in question."). Maciel did not testify that she was compelled to drive while intoxicated due to a threat of harm, much less an *immediate* threat of harm. *See Tex. Dep't of Public Safety v. Moore*, 175 S.W.3d 270, 275 (Tex. App.—Houston [1st Dist.] 2004, no pet.) ("The necessity defense lasts only as long as the actor reasonably believes criminal conduct is necessary to avoid imminent harm."); *see also Stefanoff v. State*, 78 S.W.3d 496, 501 (Tex. App.—Austin 2002, pet. ref'd) ("After adducing evidence of imminent harm, a defendant must next establish facts indicating a reasonable belief that the criminal conduct was immediately necessary to avoid the imminent harm."). No evidence was offered to refute Officer Shaw's evaluation of the necessity of moving the vehicle off the roadway especially when Maciel reiterated that she "was very confused," and "wasn't really sure what was going on." *See Kelso*, 562 S.W.3d at 132; *Rodriguez v. State*, No. 02-17-00371-CR, 2022 WL 2840153, at *2 (Tex. App.—Fort Worth July 21, 2022, pet. ref'd) (mem. op., not designated for publication) (*Rodriguez III*) (finding harm where the defendant testified that using deadly force "was immediately necessary to defend" himself and others). In fact, Maciel admitted that there

11

was no traffic on the road, and she agreed "that with very much more traffic on the road, [the situation] could have been really tragic." *Cf. Pennington*, 54 S.W.3d at 858 (concluding as a matter of law that a thirteen-year-old child's possession of drugs was immediately necessary because the child was about to view his father use drugs in his own home and according to the child, the danger was impending and "was about to occur"). Therefore, we conclude that there "was [no] evidence of a specific imminent harm on the occasion in question." *See Stefanoff*, 78 S.W.3d at 501 ("We do not discount appellant's illness; we find, however, that none of his testimony produces evidence of any conduct that would lead a reasonable person to believe a specific harm was imminent."); *Daugherty*, 2019 WL 2195256, at *1.

The dissent states that we focus "on evidence contrary to [Maciel's] necessity defense and every perceived weakness and inconsistency in her testimony." But the court of criminal appeals did the very same when conducting an analysis for some harm in *Braughton*: "To establish harm . . . the evidence would need to present some plausible basis . . . . But the evidence . . . viewed in its totality, contradicts the plausibility of such a scenario." *Braughton v. State*, 569 S.W.3d. 592, 616 (Tex. Crim. App. 2018); *see also Villarreal v. State*, 453 S.W.3d 429, 439 (Tex. Crim. App. 2015) (analyzing for egregious harm and concluding that, "[w]ith respect to the relative strength of appellant's defensive evidence, we observe that, save for appellant's own statements to police, none of the other evidence presented at trial supported a justification defense."). Similarly, we conclude that the evidence cited above, when viewed in its totality, contradicts the plausibility of driving while intoxicated under these circumstances when there is a lack of specific and imminent harm. *See Braughton*, 569 S.W.3d at 616; *see also Villarreal*, 453

12

S.W.3d at 432 (concluding that even if the jury had received the omitted instruction, it "would not likely have resulted in a different verdict because of the weakness of appellant's defensive evidence in comparison to other evidence in the record refuting the evidence"); *cf. Hill v. State*, 765 S.W.2d 794, 797 (Tex. Crim. App. 1989) (finding that appellant's testimony regarding his defense was a "key issue" in his case). Therefore, this factor weighs against a finding of harm.

## B.    Arguments of Counsel

On appeal, Maciel states she could not argue necessity because she was denied the instruction. The dissent concludes that "it would have been improper for [Maciel] to make a necessity argument to the jury," and "we should not penalize [Maciel] to giving due respect to the trial court's ruling." However, it is well established that "actual harm stemming from the denial of the instruction" is assessed pursuant to *Almanza*, and we are bound to follow this precedent. *See Braughton*, 569 S.W.3d. at 611 (considering the analysis of the arguments of counsel in a harm analysis and finding that the arguments of counsel weighed against a finding that defendant suffered harm as a result of the failure to give a necessity instruction); *French*, 563 S.W.3d at 237 ("Whether jury charge error is preserved or not, the degree of harm resulting from the error must be measured in light of all four factors identified in *Almanza*").

In *Juarez*, the court of appeals examined the parties' closing arguments observing that the State argued—on at least three occasions—that there was nothing in jury charge "nothing at all, about any legal excuse, any legal excuse or any legal justification" for appellant's conduct. *Juarez v. State*, No. 12-08-00009-CR, 2009 WL 768595, at *6 (Tex. App.—Tyler March 2009), *aff'd*, 308 S.W.3d 398, 399 (Tex. Crim. App. 2010). The court

13

of appeals further observed that in closing arguments, appellant "clearly repeated" that he bit the officer to get the officer off appellant's back because appellant was suffocating. *Id.* The appellate court stated:

> Appellant clearly admitted biting [the officer's] finger, but the State argued that there was no legal justification for his action. Because the jury charge did not include a necessity defense, the jury was not free to interpret the evidence in such a way that supported a finding of necessity if they believed Appellant's justification defense.

*Id.* Thus, in conducting an *Almanza* harm analysis after the erroneous omission of a necessity instruction, the *Juarez* court examined both parties' closing arguments, and we are persuaded by the lower court's harm analysis on remand. *Id.*

In *Rodriguez III*, on remand for a harm analysis, the appellate court examined the parties' closing arguments, noting that the necessity defense "found [its] way into both the State's and Rodriguez's closing arguments." *Rodriguez III*, 2022 WL 2840153, at *2. Specifically, "[c]ounsel's arguments branched off into elements of Rodriguez's justification defenses." *Id.* at *3. Furthermore, the appellate court noted that the State's rebuttal also addressed the necessity elements when it argued Rodriguez's defense was incompatible with necessity or self-defense because Rodriguez was afraid he was going to be murdered, yet he did not call for a police officer or drive off in his Hummer. *See id.* Instead, he walked to the Hummer, retrieved his gun, and came back to the scene even though Rodriguez "want[s] you to believe he was in fear for his life." *Id.* at *4.

In *Villarreal*, the jury instruction omitted the statutory presumption of reasonableness, and the appellate court found egregious harm because the matter of reasonableness was a "hotly contested issue at trial." 453 S.W.3d at 432. The court of criminal appeals, however, concluded that the appellate court performed an "incomplete

14

review of the record and the arguments of counsel." *Id.* at 431. According to the high court, the appellate court erroneously determined that "the omission of the instruction egregiously harmed appellant by depriving him of his *sole* defense at trial" because "a close examination of appellant's trial counsel's arguments" suggests that "the omission of the instruction affected only appellant's *secondary* defensive theory" and therefore the omitted instruction did not touch upon a "vital aspect" of his case. *Id.* at 440. "In his closing arguments to the jury, rather than advancing appellant's justification defense, counsel highlighted the inconsistencies in witness testimony for the purpose of undermining the State's case against appellant." *Id.* at 441. "In defense counsel's sole reference to appellant's statements" "asserting self-defense, he sought to downplay the probative value of those statements." *Id.* Instead, the primary focus of appellant's theory was that the State failed to meet essential elements of the crime. *See id.* The Court concluded that the omission had not vitally undermined "appellant's sole defense" because "defense counsel relied on that defense as an alternative to his other defense." *Id.*

We find the issues in *Juarez* and *Rodriguez III* analogous to the issues here, we are persuaded by their analyses of the parties' closing arguments on remand for a harm analysis, and we cannot agree with the dissent that this case "does not lend itself to that kind of analysis." *See Juarez*, 2009 WL 768595, at *6; *Rodriguez III*, 2022 WL 2840153, at *4.

### i) Maciel disavows necessity

In her closing argument, Maciel appeared to disavow the necessity defense by stating "We are not here to say that Miss Maciel didn't necessarily make some mistakes, okay . . . She made the mistake of getting in the vehicle with her brother." *See Rodriguez*

*II*, 524 S.W.3d at 392. Rather than suggest that the jury consider her conduct proper because she believed it was immediately necessary to avoid imminent harm and the urgency of avoiding the harm clearly outweighed the harm sought to be prevented, Maciel rejected the necessity of her actions in that moment, arguing instead that she "shouldn't have had as much to drink to impair her judgment"; she was making "poor decisions . . . all the way around"; and she "should have left with her friend . . . when her friend offered to take her home." *See Villarreal*, 453 S.W.3d 441–42 ("Because the omitted presumption-of-reasonableness instruction pertains only to the question of the reasonableness of an actor's belief that the use of deadly force was immediately necessary, and because the reasonableness of appellant's belief was not at the center of either defense counsel's or the State's arguments, we conclude that this factor weighs against a finding of egregious harm."). Like *Villarreal*, Maciel "relied on that [necessity] defense as an alternative to h[er] other defense that the State's evidence failed to prove [Maciel's] culpability beyond a reasonable doubt on the basis of the weakness in the State's evidence" because she did not operate the vehicle. *Id.* at 451.

The central issue in closing arguments was whether Maciel operated the vehicle—not whether it was necessary for her to do so because of a specific imminent or impending danger:

- "She simply could not figure out how to get the car moving, and that's what you saw . . . that's why it's smoking. That's why the engine is smoking";

- "She was not operating the vehicle because she couldn't";

- There was "reasonable doubt that she drove or didn't drive from Northgate to wherever it was parked";

- There was reasonable doubt that "sitting behind the wheel with the engine on" constitutes "operating a vehicle";

16

- "She simply could not operate the vehicle, and nobody can tell you different";

- "Do you believe that when she couldn't move the vehicle that constituted operating a vehicle, and we say absolutely not";

- "She wasn't trying to operate the vehicle to drive it";

- "She did not drive the vehicle, okay?";

- "In other situations, you can infer, you know, driving from the circumstances. Again, you can't infer driving in these circumstances";

- "All we can infer is that she was sitting behind the wheel with the engine on";

- "That vehicle did not move from that place, and nobody can tell you different";

- "You have to ask yourself, you know, what is the law really designed for, okay? It's not designed for somebody sitting there in the vehicle, unable to move it, unable to operate it."

Unlike *Juarez*, Maciel did not present a justification defense in her closing argument which the jury was prevented from believing had they been provided a necessity instruction. *See* 2009 WL 768595, at \*6. There are no statements by Maciel during her closing argument about her belief that her conduct was necessary to avoid an impending danger or that the urgency of avoiding the harm clearly outweighed the harm sought to be prevented.[5] Contrary to *Juarez* where the State repeatedly asserted there was no legal justification for his actions, here the State did not refute a legal justification or even broach a rejection of necessity in any manner. *Id.*; *see also Rodriguez II*, 524 S.W.3d at 392 ("But nothing from the arguments of counsel at trial would lead to the conclusion that his

---

[5] At most, Maciel asked the jury to consider motive when counsel argued, "She wasn't trying to operate the vehicle to drive it. She was trying to operate the vehicle to get it off the road. That matters." *See id.*

17

defensive theory was built upon the defense of necessity."); *cf. Rogers I*, 550 S.W.3d at 193 (finding that appellant was harmed from the denial of a necessity instruction where the trial court enforced a motion in limine throughout trial, "and the jury had no opportunity to consider or reject necessity . . . because the trial court's [motion in limine] prohibited any mention of it" in voir dire, opening statement, during evidence, or argue it in closing). Unlike *Rodriguez III*, Maciel did not branch off into the elements of necessity in her closing arguments, and the State did not refute any necessity elements in its closing or rebuttal. *See Almanza*, 686 S.W.2d at 171 (requiring us to analyze the arguments of counsel in our harm analysis); *Cf. Rodriguez III*, 2022 WL 2840153, at *3 (finding some harm in the omission of the necessity instruction because "[e]lements of Rodriguez's justification defenses found their way into both the State's and Rodriguez's closing arguments."). Therefore, because the parties did not argue necessity to the jury in closing arguments, we conclude this factor weighs against a finding of harm.

## C.  Other Relevant Information

### i)  Voir Dire & Opening Statements

Maciel does not refer us to any portions of voir dire where she questioned the jury about her actions being necessary to avoid imminent harm or about the urgency of the situation outweighing the harm. *See Almanza*, 686 S.W.2d at 171 (requiring us to review voir dire in our harm analysis); *see also Rodriguez III*, 2022 WL 2840153, at *2 (finding that the State and defense counsel addressed self-defense during voir dire, and repeated the elements of self-defense as set out in the penal code, such that venire members even sought clarification); *see also Cornet v.* State, 417 S.W.3d 446, 455 ("Other relevant information in the record suggests that appellant's defensive theory at trial was focused

18

on his argument that the State failed to prove" an essential element of the charge "rather than on the medical-care defense."). In her opening statement, Maciel claimed that she climbed into the driver's seat "with the intention of moving the vehicle off the road, moving the vehicle to safety" and that she was "trying to get them off the road." To the extent Maciel argues these statements attest to both necessity defense prongs, "more than a generalized fear of harm is required to raise the issue of imminent harm." *Stefanoff*, 78 S.W.3d at 501. Maciel did not return to this topic, and she never articulated *why* she felt that she needed to move her car. She neither cited any dangerous condition or harm nor as previously set out above presented evidence that there was an emergency making it immediately necessary for her to move the vehicle to avoid that harm or dangerous condition. *See Pennington*, 54 S.W.3d at 857; *cf. Rodriguez III*, 2022 WL 2840153, at *11 (finding harm when defense counsel invoked his justification defense during opening statements, including "The testimony I believe will be that—that [Rodriguez] acted in self-defense").

Additionally, the State did not ask the jury to reject a theory that the conduct was immediately necessary to avoid imminent harm. *See Villarreal*, 453 S.W.3d at 440 ("Because the omission of the instruction affected only appellant's secondary defensive theory, we do not find that the omitted instruction touched upon a 'vital aspect' of his case."); *see also Cornet*, 417 S.W.3d at 455 ("Because he did not question the jury about the defense during voir dire or invoke the defense in his opening statement, and because he made comments suggesting to the jury that appellant's conduct was a mistake and inappropriate, trial counsel's request for the medical-care defense appears to be an afterthought and does not appear to be the primary focus of his defensive theory at trial.");

19

*cf. Rodriguez*, 2022 WL 2840153, at *2 (finding some harm because "Rodriguez's justification defenses were threaded throughout the trial. They appeared everywhere except in the charge"). Neither the State nor Maciel addressed the issue of Maciel's conduct being immediately necessary to avoid imminent harm. Accordingly, there is no other evidence from which to gauge actual harm.

### ii) Not a Split-Second Decision

To prevail on her necessity defense, there needed to be evidence of immediate harm, "something that is going to happen now." *Kelso*, 562 S.W.3d at 132. Here, there was no evidence that Maciel operated the vehicle due to a "split-second decision," and Maciel did not suggest that she sought to avoid any harm. Her brother vomiting and stopping the vehicle in the middle of the road is not evidence of "a split-second decision . . . without time to consider the law" that would require her to drive while highly intoxicated and endanger the public and her passengers with the very harm the statute seeks to prevent. *See id.*; Tex. Penal Code Ann. § 9.22. Her statement that she wanted to get the car to safety does not demonstrate that she had to make a "split-second" decision. *See Murkledove*, 437 S.W.3d at 25. The only evidence presented regarding the safety of the situation, in which Officer Shaw testified that it was safe for him to conduct SFSTs in the middle of the road, leads to a conclusion that the parked car did not pose any imminent harm. Maciel did not rebut this testimony or provide evidence that she had a reasonable belief that driving with a blood alcohol content of .234 was immediately necessary to avoid said harm. *Kelso*, 562 S.W.3d at 132 ("A threat of harm at some indefinite time in the future is insufficient to satisfy the requirement of imminence."); *Wood v. State*, 271 S.W.3d 329, 335 (Tex. App.—San Antonio 2008, no pet) (finding the

20

desirability and urgency of avoiding the harm clearly outweighed the harm sought to be prevented when appellant made the decision to drive away as she was being forcibly pulled from her truck into a dark and desolate street, heard his teeth grinding, and had to make a "split-second" decision to drive away "with no time for reflection"); *Cyr v. State*, 887 S.W.2d 203, 205 (Tex. App.—Dallas 1994, no pet.) (holding appellant's belief was unreasonable as a matter of law because there was no evidence of imminent harm); *Wilson v. State*, 777 S.W.2d 823, 825 (Tex. App.—Austin 1989) (holding appellant's belief unreasonable because there was no evidence of immediate necessity), *aff'd*, 853 S.W.2d 547 (Tex. Crim. App. 1993).

### iii)    Not a Single Defense

In *Dugar,* the court of appeals found that appellant had only a single defense: self-defense. 464 S.W.3d at 821–22. When the trial court denied the instruction "on appellant's sole defensive theory," "the jury was given a charge that contained no vehicle with which to acquit." *Id.* at 822. However, when Maciel's defensive theory rejected culpability for the offense based on the lack of an essential element of the crime, the jury was not left "without a vehicle by which to acquit" her. *Id.; see also Jenkins v. State*, 468 S.W.3d 656, 681 (Tex. App.—Houston [14th Dist.] 2015, pet. dism'd) (finding some harm because "Jenkins's entire defense was based on" his defensive theory, and he presented evidence supporting his defensive theory.).

Again, in *Villarreal*, the court of criminal appeals did not find egregious harm because "the record indicates that trial counsel did not rely exclusively on [self]-defense." 453 S.W.3d at 433. The Court held that because appellant was the aggressor, and "considering that appellant's defensive strategy relied upon two theories, only one of

21

which would have been affected by the error, we are persuaded that there is no substantial risk of harm to appellant as a result of the omission of the instruction." *Id.* at 443. Maciel's defense did not rest solely on her need to drive while intoxicated due to an imminent danger, so there was no substantial risk of harm to her as a result of the omission. *See Guilbeau v. State*, 193 S.W.3d 156, 161 (Tex. App.—Houston [1st Dist.] 2006, pet. ref'd) (concluding that appellant suffered some harm without a self-defense instruction because: (1) "appellant's entire defense rested on his right to defend himself"; (2) "both the prosecution and appellant discussed the law regarding self-defense during voir dire, and appellant began his voir dire by stating that 'this case is about self-defense'"; (3) "appellant pursued the theory of self-defense in his opening statements and introduced testimony on the issue"; and; (4) "the first question posed by the jury was 'why was the charge of self-defense thrown out?'").

### iv) "Ordinary standards of reasonableness" preclude driving with a BAC of .234

At trial, Maciel provided no testimony explaining why in this situation—when she was three times over the legal limit and admittedly dazed and confused—it was *necessary* for her to drive other than her statement she wanted to get the car to safety, which was in response to leading and suggestive questions. *See Arnwine v. State*, 20 S.W.3d 155, 160 (Tex. App.—Texarkana 2000, no pet.). There was evidence that there was no traffic on the road; Maciel was not involved in a car accident; there was no ongoing medical emergency; no one was involved in any physical altercation; and no one was suffering duress from any physical threat. *Cf. Gibbons v. State*, 874 S.W.2d 164, 165 (Tex. App.—Houston [14th Dist.] 1994, no pet.) (rejecting the necessity defense as a matter of law when appellant drove while intoxicated to pick up his wife while she threatened to commit

22

suicide but "any possible justification for his conduct evaporated" when he reentered his vehicle); *Roark v. State*, No. 01-09-00428-CR, 2020 WL 5823152, at *6 (Tex. App.—Houston [1st Dist.] Oct. 1, 2020, no pet.) (mem. op., not designated for publication) (finding harm after the trial court refused a necessity instruction in an evading arrest charge when appellant claimed to have dislocated his shoulder and needed to go to the hospital after he was trampled on and dragged across the street, by activists during a protest described as "complete loss of control" and "mayhem").

According to "ordinary standards of reasonableness," the weight of the evidence is that the risk of moving the vehicle is at least as great as the harm which Maciel was purportedly seeking to avoid, and we must consider the plausibility of the evidence raising the issue. *See Villarreal*, 453 S.W.3d at 436; *see also Sirmans v. State*, No. 06-06-00014-CR, 2006 WL 1676208, at *2 (Tex. App.—Texarkana June 20, 2006, pet ref'd) (mem. op., not designated for publication) (finding the trial court did not err in failing to submit a DWI necessity instruction because appellant could have: (1) "and certainly should have[] asked for someone else to drive her"; (2) "contacted the officers directly by telephone and discussed the matter"; (3) "walk[ed] from her location"; and (4) "contacted the police by telephone and allowed them to drive to her location"); *cf. Roark*, 2020 WL 5823152, at *6 ("[A] jury could find that it was reasonable for appellant, who had already been seriously injured in the chaos . . . to believe that fleeing the scene was immediately necessary to avoid additional imminent harm," and the "urgency of avoiding further injury (or possibly death) clearly outweighed, according to ordinary standards of reasonableness, the harm in appellant's fleeing law enforcement to avoid being further injured in the mayhem.").

"As a matter of law, when criminal conduct is no longer necessary to avoid imminent harm, the necessity defense evaporates." *Moore*, 175 S.W.3d at 274. Here, Maciel could have put on the flashers, walked away, and called for assistance. *See Arnwine*, 20 S.W.3d at 160 (providing that "the existence of lawful alternatives to the commission of a criminal act may preclude a defendant from the defense of justification by necessity"); *see also Sirmans*, 2006 WL 1676208, at *2 ("[T]here were other, less dangerous options that were certainly not illegal."). Maciel did not cite, and we have not found, any case where a defendant was harmed by the denial of necessity instruction when the defendant did not demonstrate that the urgency of avoiding harm clearly outweighed ordinary standards of reasonableness.

The dissent states that we have invaded the province of the jury, suggesting that a jury may have acquitted Maciel of DWI because it was necessary for her to drive. We agree that it is the province of the jury to acquit Maciel based on the necessity defense if there was some evidence of imminence or urgency, and if according to ordinary standards of reasonableness, it was necessary to do so. But here there was no evidence of any urgency or a danger other than Maciel posing as a danger to herself, her passengers, and other drivers by driving while intoxicated, and according to ordinary standards of reasonableness, a car sitting idly on the roadway is not a greater risk than a highly intoxicated person who is unaware of the situation around her and who did not state a reason for moving the vehicle other than "moving it to safety." *See Shafer v. State*, 919 S.W.2d 885, 887 (Tex. App.—Fort Worth 1996, pet. ref'd) ("[A] person who voluntarily consumes a large quantity of alcohol before operating a motor vehicle should know that it is only a question of when, not if, the alcohol will impair his or her motor skills."); *see*

24

*also Villarreal*, 453 S.W.3d at 437 (concluding that, assessing harm, "the court of appeals erred by failing to consider the relative weakness of the defensive evidence in light of the entire record").

We conclude that the evidence did not demonstrate a plausible basis due to a "reasonable belief" of a specific impending and *imminent* harm. S*ee Braughton*, 569 S.W.3d at 616 ("There is no realistic probability that the jury would have opted to convict appellant of felony deadly conduct had it received an instruction on that offense."). When the evidence is viewed in its totality, it contradicts the plausibility of an acquittal. *See id.* To extend a finding of harm in this case risks another harm—that of a highly intoxicated driver almost thrice over the legal limit—driving on a public highway, with two other passengers, merely to move the car to the side of the road, when the evidence shows that the intoxicated driver operated the vehicle out of convenience, and there was no evidence that there was an immediate danger*. See Moore*, 175 S.W.3d at 276 (finding that appellant drove while intoxicated "not as a matter of necessity, but only as a matter of convenience"). There is no reasonable probability that a jury would have opted to acquit Maciel had it received a necessity instruction when Maciel was severely intoxicated, unable to understand the nature of the events around her, there was no evidence of a specific impending and imminent harm, Maciel did not testify that it was necessary to drive, and driving while intoxicated is unreasonable according to the ordinary standards of reasonableness. *See Braughton*, 569 S.W.3d at 609 (providing that the State must present enough evidence for a jury to (1) find the essential elements of the offense beyond a reasonable doubt and (2) reject the defendant's self-defense issue beyond a reasonable doubt). Thus, we cannot conclude that "the desirability and urgency of avoiding the harm

25

clearly outweigh[ed], according to ordinary standards of reasonableness, the harm sought to be prevented." TEX. PENAL CODE ANN. § 9.22(2).

## VI. SUMMARY

In view of the totality of the record before us, we cannot conclude that the error was harmful. *See French*, 563 S.W.3d at 239 ("[W]here a record reveals a risk of harm that is so small that it may properly be characterized as not remotely significant, or where the risk of harm is almost infinitesimal, any harm resulting from the error is only theoretical harm.") (citations omitted). Therefore, in an analysis based on actual harm rather than theoretical harm, the failure to submit a necessity instruction—when there is no evidence of a specific impending and imminent harm—was not calculated to injure Maciel's rights. *See Rogers*, 550 S.W.3d at 192; *Villarreal*, 453 S.W.3d at 440 ("Even had the jury been properly instructed as to the presumption of reasonableness under Section 9.32(b), we conclude that the presumption was inapplicable to the facts of this case based on the lack of evidence to support the presumption."); *Celis v. State*, 416 S.W.3d 419, 430 (Tex. Crim. App. 2013). Considering the entire jury charge, the state of the evidence, the argument of counsel and other relevant information, we conclude that the risk here was not "remotely significant" such that Maciel was harmed. *See Almanza*, 686 S.W.2d at 171; *see also Pedregon v. State*, No. 08-18-00119-CR, 2020 WL 1149997, at *8 (Tex. App.—Waco March 10, 2020, no pet.) (mem. op., not designated for publication). Based on the foregoing, we believe these set of facts are distinguishable as "one of the rare cases in which the trial court's refusal to instruct on a [necessity] defense was harmless." *Rogers*, 550 S.W.3d at 192. We overrule Maciel's sole issue.

## VII. CONCLUSION

We affirm the trial court's judgment.

JAIME TIJERINA
Justice

Dissenting Opinion by Justice Benavides.

Publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed on the
15th day of June, 2023.

27